384        CITY OF CHICAGO *v.* THE PEOPLE *ex rel.*    [Sept. T.

Opinion of the Court.

# THE CITY OF CHICAGO

## *v.*

## THE PEOPLE *ex rel.* Henry B. Miller.

1. SCHOOL LAW—*control of property and fund.* The State has never granted irrevocably the title to the school property and fund to any body of persons. It has created corporate bodies to handle and control the fund for the use of the people, but has not parted with the power to control the fund in any mode the legislature may choose, for the use of schools. The State is virtually a trustee of the fund, and the municipalities and officers are but the agencies employed by the State in executing the trust.

2. SAME—*constitutional guaranty.* Article 8, section 2, of the constitution of 1870, securing the faithful application of the school fund and property to the objects of education, includes the lands and moneys embraced in the common school fund, and the college, seminary and university lands and funds in the hands of or under the control of the State, and clearly prohibits the perversion of the same to other purposes.

3. SAME—*power to tax.* As the State is prohibited from appropriating any of this fund to defray the expenses of the State, counties or other municipal bodies than those created for public school purposes, it can not do the same by the indirect means of taxation.

4. Where moneys belonging to the school fund are loaned on mortgage security, and the title to real estate is acquired on foreclosure, and is held for school purposes only, the legislature has not the constitutional power to tax the same, although the legal title may be held in the name of a city which is entrusted with the fund and the public schools within its limits.

5. Real estate acquired on foreclosure of mortgages given to secure the re-payment of school moneys loaned, in fact belongs to the State, in trust for school purposes, and, under the Revenue Law of 1874 (section 2), is exempted from taxation.

APPEAL from the County Court of Cook county.

Mr. JAMES GOGGIN, for the appellant.

Mr. JOHN M. ROUNTREE, for the People.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The county court of Cook county rendered a judgment against certain lands for the taxes of 1874, on the application of the collector, and the city appeals to this court.

The lands are held in the name of the city, and exclusively for the use of the public schools therein. The city has the sole charge of public schools within its limits, and these lands were purchased by the city on the foreclosure of mortgages taken to secure loans of money arising from the sale of the 16th section in township 39 north, in range 14 east of the third principal meridian, and which had been donated by the general government for school purposes. The lands were not leased by the city nor used with a view to profit, and there are no school houses on them.

By the 6th section, clause 1, of the act of Congress of the 18th of April, 1818, (3 Stats. at Large, p. 428,) it was enacted that, " the section numbered 16 in every township, and when such section has been sold or otherwise disposed of, other lands equivalent thereto, and as contiguous as may be, shall be granted to the State, for the use of the inhabitants of such township, for the use of schools."

The 16th section was sold and the money was loaned for school purposes, and, by the foreclosure of mortgages to secure the loan of the same, the title was acquired by the city, and it is held for public school purposes.

By an act approved on the 15th of January, 1825, R. S. 1833, p. 560, sec. 19, the Auditor and Secretary of State were, under the direction of the Governor, made commissioners of the school fund. On the 22d of January, 1829, the General Assembly passed an act authorizing the county commissioners to appoint a school commissioner in their respective counties, and the same act authorized him, in the mode therein prescribed, to sell the 16th section and loan the money received therefor, and to pay the interest received thereon, to the trustees of schools of the respective townships. The law in this regard has remained substantially unaltered to the present time.

No act of the General Assembly has ever granted the title to the school property and fund irrevocably to any body of persons. They have created corporate bodies to handle and control the fund for the use of the people, but that body has

25—80th Ill.

not parted with the power to control the fund in any mode they may choose, for the use of schools. They could, if disposed, deprive those to whom its management is intrusted, of the fund, and entrust it to others. Whilst the increase of the fund should be expended in the support of schools, the manner or the agency employed may be at all times controlled or changed by the State at pleasure. The State is virtually a trustee of the fund, for the use of the people, and the municipalities and officers are but the agencies employed by the State in executing the trust. But the State has the power to resume the fund and use it for the purposes designated by the act of Congress. This being so, the State is the real owner of the fund, to be held in trust for the purposes of the grant.

Article 8, section 2, of the constitution of 1870, provides that, "All land, moneys, or other property donated, granted or received for school, college, seminary or university purposes, and the proceeds thereof, shall be faithfully applied to the objects for which such gifts or grants were made."

This provision includes the lands and money embraced in the common school fund, also the college, seminary and university lands and funds in the hands of or under the control of the State. This constitutional provision amply provides for the preservation of, and clearly prohibits the perversion of, the fund to other purposes. Under it, the legislature has no constitutional power to appropriate any portion of this fund to defray the expenses of the State, counties or other municipal bodies, than those created for public school purposes; and the General Assembly is, as we have seen, prohibited from directly appropriating this fund to State, county, or municipal purposes, or any portion of it, and they can not accomplish the same end by indirect means. If they can not so appropriate it directly, they can not by the indirect means of taxation; because, so much as would be taken from the fund by taxation would be an unconstitutional perversion of the fund to that extent. It, then, follows that this property being a part of the public school fund, the General Assembly can not subject it to taxation.

Another view may be taken of this question. The present constitution provides by section 3, article 9, that "the property of the State, counties and other municipal corporations, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempt from taxation." This section will hardly bear the construction, that the public school property alone is embraced in its provisions, but it was intended to embrace private schools, or schools under private charters, as well as the public school fund; but be that as it may, it does embrace property of the State, and we have seen that the public school property and funds do, virtually and in fact, although not in form, belong to the State.

The second section of the Revenue Law of 1874 provides that "all property, of every kind, belonging to the State of Illinois," shall be exempt from taxation. Under a similar provision, it was held that property conveyed to the board of trustees of the Illinois Industrial University belonged to the State, and was exempt from taxation. The principles announced in that case must govern this. *Board of Trustees Illinois Ind. Univ.* v. *Supervisors of Champaign County,* 76 Ill. 184. And whilst we hold, as we did in the case of the *Northwestern University* v. *The People, ante,* p. 333, that provisions exempting property from taxation are to be strictly construed, we regard the construction here given as being strict and limited. Independent of the constitutional provision, we can not see that it was the intention of the General Assembly to subject this property to taxation. We must therefore hold that the court below erred in rendering the judgment for its sale, and the judgment must be reversed.

*Judgment reversed.*