Shearer, J.
The question presented by the demurrer is whether lands donated by Congress to the State of Ohio, for the benefit of common schools, can be lawfully assessed for the expense of the construction of free turnpike roads.
This involves an examination of the action of congress and of the legislature in respect to these lands.
By section seven of an act approved April 30,1802, (1 Chase St. 72) Congress offered to the convention of the eastern state of the territory northwest of the river Ohio, a proposition for “its full acceptance or rejection” ; which if accepted was to be obligatory upon the United States : “First. That the section number sixteen, in every township, and where such section has been sold, granted, or otherwise disposed of, other lands equivalent thereto, and most contiguous to the same, shall be granted to the inhabitants of such township, for the use of schools.”
On the 29th day of November, 1802, the convention resolved to accept said proposition, provided that like donations of unlocated lands in the United States Military tract and other government lands should be made for the support of schools in such other territory ; and that ‘all lands before mentioned to be appropriated by the United States for the support of public schools should be vested in the legislature, in trust for said purpose.’ (1 Chase 74.)
This modification of the proposition was assented to by congress by the act of March 3, 1803, (1 Chase 72) which en *45 acted that all said lands should be “ vested in the legislature * * * in trust for the use aforesaid, and for no other use, intent, or purpose, whatever.”
This action constituted a compact between congress and the people of Ohio, whereby the object of the grant was clearly defined, and limited to the support of public schools in this state; and the state can not in good faith divert the subject of the trust to any other use.
To secure the faithful application of the trust property, it is ordained by the constitution, Art. VI. Sec. 2, that “ the principal of all funds arising from the sale, or other disposition of lands, or other property, granted or entrusted to this state for educational * * * purposes, shall forever be preserved inviolate and undiminished; and the income arising therefrom shall be faithfully applied to the specific objects of the original grants, or appropriations.”
So far as we know the trust created by the appropriation of these lands to the use of the schools of the state has been maintained. The revenues arising from the lands have been faithfully applied to the support of schools, and where the lands have been sold, the proceeds have been preserved inviolate and undiminished, the interest only being used for school purposes. Conceding that the general assembly has exempted school lands from taxation; it is contended that such exemption is limited to taxation as distinguished from assessments. That inasmuch as the exemption refers expressly to taxation, all other exemptions are excluded, and therefore an assessment such as is sought to be upheld in this case is lawful.
In support of this view the case of Lima v. Cemetery Association, 42 Ohio St. 128, is cited, which decides that an incorporated cemetery association is not relieved from an assessment for a street improvement by a statutory provision exempting its lands from taxation, such exemption being regarded as confined to taxes as distinguished from local assessments.
In that case the lands were the property of a private corporation, which but for the express exemption by law, would have been liable for taxes. In other words, it is only by virtue of the statute that cemeteries and the like are exempt *46 from taxation, and assessments as distinguished from taxes not being included within the exemption, may be lawfully levied upon the real estate of such corporations. But can this be so as to lands belonging to the state, and held for the support of public schools ? The policy of the state from the time of its organization has been to encourage schools and the means of education. To hold that school lands may be assessed for the construction of roads, ditches and the like, and the rents sequestrated to pay the expense, would be to defeat the object of the trust upon which the state holds its title, and against state policy. We are bound to presume that the legislature, in whom is vested the title to these lands, did not intend, in exempting from taxation cemeteries and the like, to imply the right to assess lands held by it for school purposes for local improvements, and thus impair, if not defeat, the very object of the grant.
The case of Lockwood v. St. Louis, 24 Mo. 20, cited by counsel for plaintiff, differs from this in that in that case the property assessed was private property, not held, as here, by the state for specific uses. The question there was whether an exemption ought to be implied in favor of church property, because by the law it was expressly exempted from taxation.
A statute excepting private property from a burden, to which but for the exception it would be subject, should be strictly construed. . And the court in that case properly held the exemption not to embrace assessments. This is in accord with Lima v. Cemetery Ass’n, supra. But in the case at bar, as it seems to us, a different rule should be adopted.
These school lands are not private property, but a public trust, to be managed and administered for the benefit of the public schools of the state. The framers of the Constitution do not seem to have thought it necessary to throw any specific safe-guard about this trust; but they did provide that “ the principal of all funds arising from the sale or other disposition of lands or other property, granted or entrusted to this state for educational * * * purposes, shall forever be preserved inviolate and undiminished.” Const., Art. YI, § 1.
Is it not clear, the above provision and the legislation by *47 which this trust was created being considered, that the purpose of the law-givers was that school lands, and the proceeds of the sale thereof, and the rents arising therefrom, should be kept intact, and applied solely to the support of the schools of the state ?
To hold otherwise is to recognize the right to destroy the school funds arising from such lands.
The policy seems to be to preserve the integrity of the trust, applying the revenue to school purposes; and if the lands are sold, the proceeds must be held as a substitute therefor, and preserved “ inviolate and undiminished.”
It was not necessary, in view of the plain terms of the compact between Congress and the State, to provide in the organic law for the preservation and application of the lands granted. There was propriety in a constitutional prohibition upon the diversion of the funds arising from the sale, although, as we think, it was unnecessary.
Article 8, Section 2 of the Constitution of Illinois, provides that “all land, moneys or other property donated, granted or received for school, college, seminary or university purposes, and the proceeds thereof, shall be faithfully applied to the objects for which such gifts or grants were made.”
The difference between this provision and our own constitution in this behalf, is rather verbal than substantial.
In Chicago v. The People ex rel., etc., 80 Ill. 384, the judgment of the county court, against certain school lands for taxes, was reversed, the supreme court holding that the constitutional provision above quoted * * * “ clearly prohibits the perversion of the fund to other purposes.....The general assembly is prohibited from directly appropriating this fund to state, county or municipal purposes, or any portion of it, and they cannot accomplish the same end by indirect means. If they cannot so appropriate it directly, they cannot by the indirect means of taxation; because, so much as would be taken from the fund by taxation would be an unconstitutional perversion of the fund to that extent.”
The People ex rel. v. Little, Collector, 118 Ill. 52, was a proceeding to obtain judgment against section 16, in Lee county, for a special drainage assessment. The county court gave judg *48 ment against the collector, who appealed. The Supreme Court affirmed the judgment, holding that “ school property or school lands held in trust for school purposes are exempt from special assessments as well as from general taxation.”
The following extract from the opinion answers two points made by counsel for plaintiff, viz.: that the benefits are compensation for the assessments, and that the rents may be sequestrated for the payment of the assessments.
The court say: “ It does not meet the objection to a special assessment to say that it takes nothing from the property, and the assessment is only to the extent of the benefit conferred upon it by the improvement. This may be so in theory, but not in certainty. The property should be held sacred for the use'to which it was appropriated. It may be sold, or it may be rented for school purposes, but no authority is conferred upon any one to improve it. It should not be exposed to the danger of being improved away, by being made to pay for supposed benefits conferred upon it by said improvements.
“It is said the purpose is not to have a sale made of the land to pay the assessment, but to obtain judgment, which may be paid out of any moneys unappropriated, of the township, or there may be the remedy by mandamus, requiring the board of the trustees to levy a tax for the payment of the judgment. But any payment so obtained would come from the school moneys, and there would be equally involved a perversion of the school fund, as if the property itself should be sold to satisfy the judgment.”
The force of the language just quoted is not broken by the fact that in Ohio school lands may be leased in consideration of improvements to be made. Certainly, it will not be claimed that the legislature, by authorizing trustees of original surveyed townships to lease school lands in a special and limited manner, thereby impliedly authorized the assessment of the same for improvements.
We are of opinion that the school lands in Ohio are exempt from assessment for improvements, and it follows that the petition does not state a cause of action. The answer is at least good as against a bad petition, and the demurrer will be overruled.