THE PEOPLE ex rel. John J. Hanberg, County Treasurer,

v.

THE CITY OF CHICAGO, for use, etc.

*Opinion filed June 23, 1905—Rehearing denied October 24, 1905.*

1. CONSTITUTIONAL LAW—*word "proceeds," used in section 2 of article 8 of the constitution, construed.* The word "proceeds," used in section 2 of article 8 of the constitution, providing that all lands, moneys or other property granted or received for school purposes, "and the proceeds thereof," shall be faithfully applied to the objects for which the gift or grant was made, means that which results from the sale or exchange of the property, including rents resulting from a demise.

2. TAXES—*fee of leased school lands cannot be taxed.* Taxation of the fee of school lands in section 16 which have been leased to third parties by the school authorities is in violation of section 2 of article 8 of the constitution, being an indirect diversion of the "proceeds" of school land to other purposes than those for which it was granted.

CARTWRIGHT, C. J., and RICKS and SCOTT, JJ., dissenting.

APPEAL from the County Court of Cook county; the Hon. L. C. RUTH, Judge, presiding.

JAMES H. WILKERSON, HARRY A. LEWIS, WILLIAM F. STRUCKMANN, and JNO. C. RICHBERG, (RICHBERG & RICHBERG, of counsel,) for appellant:

All public school lands leased with a view to profit are subject to taxation, and only school property used exclusively for school purposes is exempt from general taxation. Const. of 1870, art. 9, secs. 1, 3; Rev. Stat. chap. 120, sec. 2.

The right of taxation is essential to the very existence of the government, and all property, of every description, in the State is subject to taxation unless it has been specifically exempted. All laws exempting property must be subjected by the courts to a strict construction, and hence nothing will be held to be within the exemption which does not clearly appear so to be. *Chicago, for use, etc.* v. *Chicago,* 207 Ill. 37.

The board of education of the city of Chicago is not a separate agency of the State, but is to some extent part of the municipal part of that city. *Brennan* v. *People,* 176 Ill. 620.

In some points of view the board of education is to be regarded as a subordinate department of the city government and in others as an independent municipal government. *McGurn* v. *Board of Education,* 133 Ill. 122.

While the property in question cannot be sold to pay taxes, there are other methods provided by law by which the payment can be enforced in case there is a refusal to pay the tax. *Chicago, for use, etc.* v. *Chicago,* 207 Ill. 37; *Sanitary District* v. *Martin,* 173 id. 243.

The property of institutions of learning is exempt when not leased by such institutions with a view to profit, but when such property is leased with a view to profit it is subject to taxation. *People* v. *Ryan,* 138 Ill. 263; *People* v. *Theological Seminary,* 174 id. 178; *Theological Seminary* v. *People,* 193 id. 619; 23 U. S. 387; *Theological Seminary* v. *People,* 189 Ill. 439.

JOHN P. WILSON, and ORVILLE PECKHAM, (ISHAM, LINCOLN & BEALE, of counsel,) for appellee:

The premises here involved fall within the letter as well as the meaning of section 2 of article 8 of the constitution of 1870, which provides: "All lands, moneys or other property, donated, granted or received for school, college, seminary or university purposes, and the proceeds thereof, shall be faithfully applied to the objects for which such gifts or grants were made."

Section 16 school lands, and the proceeds of them, are exempt from general taxes and from special assessment for improvements. This is by force and virtue of section 2 of article 8 of the constitution of 1870. *Chicago* v. *People,* 80 Ill. 384; *People* v. *Trustees,* 118 id. 54.

All other school property,—*i. e.,* such as was not "donated, granted or received for school purposes,"—is subject

to taxation unless used exclusively for school purposes. If so used it also is exempt. Const. of 1870, art. 9, sec. 3; Rev. Stat. chap. 120, sec. 2.

Section 16 school property, and the proceeds thereof, belong to the State as a trustee for the use of the people. The municipalities administering the trust are but the State's agents. The State's property cannot be seized and sold for taxes in its own courts. The judgment asked, and the only judgment the county court could enter, was an order for the sale of the specific property, which would clearly be illegal. *In re Mt. Vernon,* 147 Ill. 359; *Chicago* v. *People,* 80 id. 384; *Pidgeon* v. *People,* 36 id. 249; *Chestnut* v. *Marsh,* 12 id. 173; *People* v. *Dragstran,* 100 id. 286.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The fee of lot No. 17 in county clerk's subdivision of block 119, in the school section addition to Chicago, and the east one-half of the private alley west of and adjoining this lot, except the improvements thereon and leasehold interest therein, was returned by the county treasurer of Cook county as delinquent for the taxes for the year 1903, and the county treasurer and *ex officio* collector of Cook county filed his application in the county court of Cook county for a judgment against and for an order of sale of the fee in the said premises. Taxes against the leasehold interest and the improvements thereon were assessed and extended in the sum of $6040.41 and were paid by the lessees.

By the first clause of the sixth section of the act of Congress approved April 18, 1818, which authorized the people of Illinois to organize a State government, it was enacted that "the section numbered 16 in every township * * * shall be granted to the State, for the use of the inhabitants of such township, for the use of schools." Said lot 17 is a part of section 16 of the town in which it is located. This lot was thereafter sold by the proper authorities for a valuable consideration, and through various *mesne* conveyances

the title to the same, in the year 1860, again became vested in the United States and was used by the national government for a post-office site until after the great fire in Chicago, which occurred in 1871. In the year 1873 the United States made an even exchange of this property for a certain other lot, also located in said original section 16, and which had never been sold or conveyed since it was originally granted by the United States, and upon said exchange being consummated, the title of the property in question vested in the city of Chicago for the use of schools. On July 16, 1900, the board of education of the city of Chicago demised the premises to the National Safe Deposit Company for a term of ninety-nine years from the first day of July, 1900, the rent reserved being $50,148 per annum to July 1, 1908, and $54,000 per annum during the remainder of the term, which rent was made payable quarterly, in advance. In addition thereto the lessee covenanted to pay all water rates and all taxes, duties and assessments, general and special, levied or assessed upon the premises during the continuance of the lease. A building not owned by the school authorities, used for various business purposes, stands on the premises.

The city of Chicago, in trust for the use of schools, filed objections to the application of the county treasurer and *ex officio* collector for judgment and order of sale of the fee. The court entered a judgment sustaining the objections and denying the application, and an appeal to this court has been prosecuted.

It is objected that the taxation of the fee of this property is forbidden by section 2 of article 8 of the constitution of 1870, which reads: "All lands, moneys, or other property, donated, granted or received for schools, college, seminary or university purposes, and the proceeds thereof, shall be faithfully applied to the objects for which such gifts or grants were made." These premises having been received in exchange for another portion of school section No. 16 are to be regarded as "proceeds" of lands granted by the general

government for school purposes. "Taking the words in their ordinary sense, a general power to dispose of land or real estate and to take in return therefor such proceeds as one thinks best, will include the power of disposing of them in exchange for other lands. It would be a disposal of the lands parted with, and the lands received would be the proceeds." *Phelps* v. *Harris,* 101 U. S. 380.

In *City of Chicago* v. *People,* 80 Ill. 384, an attempt had been made to tax lands which had been purchased by the city, in its capacity of trustee for the schools, at a sale made under a decree foreclosing a mortgage which had been given to secure the loan of funds arising from the sale of school lands in section 16, and this court there held that under the constitutional provision above quoted the legislature was without power to appropriate any portion of this fund to defray the expenses of municipal bodies other than those created for public school purposes, and as the law-making body could not so appropriate it directly, it could not so appropriate it by the indirect means of taxation, "because so much as would be taken from the fund by taxation would be an unconstitutional perversion of the fund to that extent." This holding was on the theory the lands procured through the foreclosure proceedings were "proceeds" of lands in the school section.

But it is argued that the income realized from the premises by way of rents is not to be regarded as "proceeds," and therefore not within the prohibition of said section 2 of article 8 of the constitution of 1870; that the property proposed to be taxed in *City of Chicago* v. *People, supra,* was non-productive, and the right to tax it was denied because to tax it would be to take the amount of the tax from the *corpus* of the fund; that the property here involved produces an annual income by way of rents, and that taxes may be imposed on the fee of the premises to an amount not exceeding the income thereof without a depletion or reduction of the fund, and that though the income be so applied to the pay-

ment of taxes, the fund itself,—the premises,—may still "be faithfully applied to the objects for which such gifts or grants were made," and' that this is all that is required by the organic law of the State.

We think that the annual sums received as rental for the property here sought to be taxed are to be regarded as the "proceeds" of lands granted for school purposes, and that to seize it in discharge of taxes would be an unconstitutional perversion of the "proceeds" of lands which had been so granted. What is the meaning to be given the word "proceeds" when lands are the subject matter to which it is to be applied? If the title of land is disposed of, that which is received therefor, whether money or other lands, is, as we have seen, properly called the "proceeds" of the land. If the land be retained and not disposed of, that which it produces by way of rents or issues constitutes the "proceeds" thereof. In *Hunt* v. *Williams,* 126 Ind. 495, it was said: "A devise of the proceeds of real estate is not materially different from a devise of the income."

It was at one time seriously questioned whether school lands in section 16 could be lawfully sold. If such power was lacking, it is clear the word "proceeds" could only relate to the rents or issues of the land. In *Bradley* v. *Case,* 3 Scam. 585, the court, by a bare majority, determined that the General Assembly might authorize the sale of the land in school sections numbered 16. While then considering whether the legislature might lawfully authorize the sale of school lands in section 16, we said: "Whether they shall be leased for a term of years, rented annually or sold, and the proceeds in either case applied, according to the compact, to the use of schools, appears to be a proper subject of State legislation." The view thus expressed that the word "proceeds" embraced that which should be received, whether from the sale of the lands or from the rental thereof, we still think to be correct. This expression was that of a majority, only, of the court, but the dissenting member held that the

lands could not be sold but must be retained by the school authorities. If so retained the schools could only be benefited by some use to which the land might be applied, and the proceeds of such use, namely, rents, would constitute the only beneficial interest of the school therein. The right of the proper school authorities to lease school lands in school section 16 is not now questioned, and as to such land the word "proceeds" is to be given the sense or meaning of income. Being "proceeds of lands granted for school purposes" it can not be appropriated by indirect means of taxation to other and different purposes. If school lands be sold and money received therefor, it becomes the duty of the proper school authorities to loan the money, and the interest received thereon is properly embraced within the meaning of the word "proceeds" of such moneys. It must be applied to school purposes, and cannot be diverted, by way of taxation, to other and different uses. And the same rule logically applies to and controls moneys received by the school authorities from rentals of the school lands.

The judgment of the county court must be and is affirmed.
                                    *Judgment affirmed.*

CARTWRIGHT, C. J., and RICKS and SCOTT, JJ., dissenting.