(No. 33936.—

THE PEOPLE *ex rel.* Herbert C. Paschen, County Collector, Appellee, *v.* HENDRICKSON-PONTIAC, INC., Appellant.

*Opinion filed September 25, 1956.*

ADELBERT BROWN, of Chicago, for appellant.

JOHN GUTKNECHT, State's Attorney, of Chicago, (GORDON B. NASH, CHARLES D. SNEWIND, and EDWARD E. PLUSDRAK, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Hendrickson-Pontiac, Inc., the appellant, filed objections in the county court of Cook County to the application of the county collector for judgment fixing the correct amount of 1949 real estate taxes paid under protest. This appeal is prosecuted from a judgment overruling such objections and denying appellant a refund of $3447.96.

The facts underlying the controversy show that the board of education of the city of Chicago holds the fee to two lots located on Laramie Avenue between Madison and Monroe streets. The said land is an unsold part of section 16, commonly referred to as school fund property, granted by the government of the United States to the State of Illinois for use of its inhabitants for schools, on the occasion of the latter's admission to Statehood. By a lease executed June 12, 1946, the two lots, then vacant and unimproved, were leased for commercial purposes to appellant, a nonexempt Illinois business corporation engaged in the operation of an automobile agency, for a term of 49 years commencing January 1, 1947. By the terms of the lease appellant agreed to pay a fixed annual rental of $5460 for the first ten years and thereafter an amount to be determined at ten-year intervals. In addition to the stipulated annual rental, appellant agreed to erect a commercial building costing not less than $100,000. Such a building was erected in 1949 and is used by appellant to conduct its automobile agency.

By paragraph 14 of the lease, which is captioned: "Surrender Premises Upon Termination," it was agreed that "upon termination of the lease, by forfeiture, lapse of time or otherwise, the lessee will at once surrender and deliver up the above described premises, together with all improvements thereon, to said lessor, and that all buildings and all fixtures made a part of buildings and improvements thereunto belonging, upon said demised premises are a part of the premises and the property of the lessor." Other provisions of the lease pertinent to this proceeding are paragraphs 4 and 5. By the former, appellant, as lessee, agreed to pay all taxes and assessments "upon said demised premises or on any and all buildings and improvements thereon, or on the leasehold estate hereby created." Paragraph 5, which authorizes appellant to "contest taxes," reads in part: "It is understood that the land demised is

School Fund Property, and as such is exempt at the present time from general and special assessment."

The land so leased was not assessed for the years 1947 and 1948, but was, rather, marked "exempt" in the collector's warrant books. In 1949, after appellant had erected the commercial building, the collector continued to show the land as exempt and also determined, under a formula wherein the value of a leasehold equity in exempt land is based solely on the value of the land, that appellant's leasehold equity had no taxable value. For the same year, however, the "improvements on the land" were assessed against appellant at $76,434 under the formula normally employed in the county, *viz.*, reproduction cost less depreciation. Thereafter taxes were levied on the basis of such valuation and were extended in an amount totalling $3447.96. Appellant paid the full amount under protest and by its subsequent objections to the application of the collector, alleged, in substance, that it was entitled to a refund: (1) because the improvement assessed is owned by the board of education; (2) because the improvement is section 16 school fund property and thus not taxable regardless of the use to which it is put; and (3) because appellant owns only a leasehold in the improvement, which has no taxable value. The county court, after hearing evidence, found that appellant had an interest which amounted to a property right in the real estate in question and overruled the objections.

Appellant's fundamental contention on this appeal is that the taxing officials were powerless to tax the improvement because it is exempt property. In support of such position it is first urged that although appellant erected and paid for the improvement, it was at all times the property of the board of education both under the terms of the lease and by operation of real property laws. Appellant reasons that its leasehold interest and the board's fee in the improvement are separate properties and, by

drawing an analogy to *People ex rel. Harding* v. *City of Chicago*, 335 Ill. 450, and *People ex rel. Carr* v. *City of Chicago*, 323 Ill. 68, where it was held that privately owned land was not relieved of tax liability even though leased for long terms to exempt municipal corporations, asserts that the board-owned improvement is not subject to taxation. Even if it were to be conceded that the board has a clear claim to the improvement prior to the termination of appellant's lease, such a theory cannot be sustained either under the constitution or implementing statutes.

The subject of exemption from taxation is dealt with in section 3 of article IX of the constitution of 1870 which provides in part as follows: "The property of the state, counties, and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempted from taxation; but such exemption shall be only by general law." In *People ex rel. Gill* v. *Trustees of Schools*, 364 Ill. 131, wherein it is stated that the framers of the constitution intended a strict construction of the provision to the end that all property should bear its just portion of taxation, this court held that although the property contemplated by the constitution must be owned by institutions, associations or corporations falling within the exempted classes named, ownership is not the sole test and that, to be exempt, such property must also be used exclusively for the purposes defined in the second clause of the section.

The constitutional provision is not self-executing but merely grants to the legislature, acting within the constitutional limitations imposed, the authority to enact legislation to exempt property from taxation. (*People ex rel. Olmsted* v. *University of Illinois*, 328 Ill. 377; *Glen Oak Cemetery Co.* v. *Board of Appeals*, 358 Ill. 48.) Pursuant to such

authority the legislature has enacted section 14—11 of the School Code, (Ill. Rev. Stat. 1947, chap. 122, par. 14—11,) which exempts school real estate from taxation in the following terms: "All lands donated by the United States for school purposes, not sold or leased; all property of schools, including the real estate on which the schools are located and any other real estate used by such schools exclusively for school purposes, not leased by such schools or otherwise used with a view to profit; and all lands, moneys or other property heretofore or hereafter donated, granted, received or used for public school, college, seminary, university, or other public educational purposes, and the proceeds thereof, whether held in trust or absolutely shall be exempt from taxation." See also paragraphs (1) and (2) of section 19 of the Revenue Act of 1939, as amended. Ill. Rev. Stat. 1947, chap. 120, par. 500.

Admittedly the school property involved in this proceeding has been leased and is being used for other than exclusive school purposes. Thus whether measured by the constitutional provision or the implementing statute, the mere fact that the property is owned by the board of education is insufficient to support a claim of exemption. Cf. *People* v. *International Salt Co. of Illinois,* 233 Ill. 223.

Without attempting to make any distinction between the land, the leasehold interest or the improvements, appellant next contends that the property here involved is immune from taxation, regardless of its use, by reason of the fact that the land is located in section 16 granted by the government of the United States to the State of Illinois for the use of its inhabitants for schools. To tax such property, appellant argues, violates section 2 of article VIII of the constitution of 1870, and impairs the contractual obligations of the State to the Federal government created by the enabling act of Congress which offered section 16 land "for use of schools," (3 U.S. Stat. at Large, 428,)

and the Ordinance of Illinois, enacted August 26, 1818, (Laws of 1819, App. p. 21,) which accepted the land for such use.

With regard to the latter point of argument it need only be pointed out that the exemption of section 16 land from taxation is not based upon any language contained in the original grant or acceptance. Neither is it founded upon any language of the constitution or our statutes relieving such property from taxation. It is, rather, based upon the ground that section 2 of article VIII of our present constitution prevents the depletion of the fund, resulting from such grant, by taxation or special assessment. (See: *City of Chicago* v. *People ex rel. Miller*, 80 Ill. 384; *People ex rel. Hanberg* v. *City of Chicago*, 216 Ill. 537; *City of Chicago* v. *University of Chicago*, 302 Ill. 455.) Accordingly, this court has held that section 16 land, so long as it remains a part of the school fund, is exempt from taxation and special assessment, and has ruled that the exemption extends to property exchanged for the school section or representing its proceeds. (*City of Chicago* v. *People ex rel. Miller*, 80 Ill. 384; *People ex rel. Little* v. *Trustees of Schools*, 118 Ill. 52; *People ex rel. Hanberg* v. *City of Chicago*, 216 Ill. 537.) The construction which has been placed upon section 2 of article VIII to reach such a result is expressed in the *Miller case*, (p. 386,) as follows: "This provision includes the lands and money embraced in the common school fund, also the college, seminary and university lands and funds in the hands of or under the control of the State. This constitutional provision amply provides for the preservation of, and clearly prohibits the perversion of, the fund to other purposes. Under it, the legislature has no constitutional power to appropriate any portion of this fund to defray the expenses of the State, counties or other municipal bodies, than those created for public school purposes; and the General Assembly is, as we have seen,

prohibited from directly appropriating this fund to State, county, or municipal purposes, or any portion of it, and they can not accomplish the same end by indirect means. If they can not so appropriate it directly, they can not by the indirect means of taxation; because, so much as would be taken from the fund by taxation would be an unconstitutional perversion of the fund to that extent."

In *City of Chicago* v. *University of Chicago*, 302 Ill. 455, this court held, however, that section 2 of article VIII does not prevent the assessment of section 16 land, for benefits, to the extent of the value of a leasehold to which the land is subject, and the improvements placed thereon by the lessee. The section 16 land in that case had been granted by the State to the city of Chicago for school use, and had been leased and improved by the University of Chicago. Upon objection of the latter to the confirmation of a special assessment against the property, the county court held the land was exempt, but refused to hold that the leasehold estate and the improvements on the land were also exempt. In affirming the lower court and in holding the assessment would not deplete school fund property in violation of section 2 of article VIII, this court said (p. 457) : "In this case there was no attempt to assess the fee or reversion but the court held it to be exempt, and the leaseholds and improvements are not school lands or proceeds of school lands. The leaseholds are the property of the lessees, and the improvements have been created, paid for and are for the benefit of the lessees, to enable them to enjoy the leasehold estates. The leases created no charge against the lands on account of taxes or assessments, but the lessees covenanted to pay all water rates and all taxes, duties and assessments, general or special, levied or assessed upon the premises during the continuance of the leases."

The quoted language, we find, is decisive of the issue now before us. Here there was likewise no attempt to

assess the land but only the leasehold therein and the improvement thereon. While the leasehold equity in the land was found to have no taxable value, the improvement was erected and paid for by appellant for the sole purpose of enabling it to enjoy its leasehold estate. Appellant argues that the *University of Chicago case* is distinguishable and inapplicable in that the lessee in that case, rather than the lessor, was the owner of the improvements assessed. Such an argument overlooks the fact that the exemption of section 16 land from taxation is bottomed solely upon the constitutional prohibition against depleting school funds and not upon use or ownership.

Appellant also suggests that since the lease in question is a ten-year revaluation lease, taxes levied against the leasehold and the improvements it enjoys would decrease the value of the lease and result in a reduction of the return realized by the board of education. The answer to such an argument is found in the lease itself, for it provides that the revaluation from which future rentals will be determined shall be based upon "the appraisal value of land herein demised (exclusive of improvements thereon  *  *  *)."

Section 26 of the Revenue Act of 1939 (Ill. Rev. Stat. 1947, chap. 120, par. 507,) provides: "When real estate which is exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, as real estate." In view of this language and in light of the construction which has been placed upon the constitutional provisions involved, we conclude that the taxing officials had authority to levy the tax objected to in the manner they did, and that such tax did not result in an unconstitutional perversion of school funds or grants.

By its final contention appellant claims that it had

only a leasehold interest in the improvement, and that the taxes paid under protest should be refunded by reason of the fact such leasehold interest had no taxable value. It is sufficient to point out that this objection to the tax goes only to the amount of the assessment and affords appellant no basis for a claim of exemption. An opportunity for reviewing the correctness of an assessment of property is provided by the Revenue Act. (Ill. Rev. Stat. 1947, chap. 120, pars. 594, 598.) As a consequence it has long been held that a taxpayer cannot defend an action for collection of a delinquent tax, on the ground of irregularities in assessment or revaluation, without having first exhausted his statutory remedies to seek revision of the assessment. See: *People* v. *Spurgeon Mercantile Co.* 352 Ill. 620; *People* v. *J. B. Inderrieden Co.* 375 Ill. 458; *Goodyear Tire and Rubber Co.* v. *Tierney,* 411 Ill. 421.

The judgment of the county court of Cook County is affirmed.

*Judgment affirmed.*