DOCKSIDE DEVELOPMENT CORP., Plaintiff-Appellant and Cross-Appellee, v. THOMAS M. TULLY, Cook County Assessor, *et al.*, Defendants-Appellees and Cross-Appellants.

First District (5th Division)   No. 78-912

Opinion filed October 19, 1979.—Rehearing denied December 6, 1979.

Brown & Blumberg, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Michael F. Baccash, of counsel), for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County permanently enjoining defendants, the County of Cook and its tax officials, from collecting a portion of the 1976 real estate taxes and entering a judgment against plaintiff, Dockside Development Corporation (Dockside), for a tax of $30,604.41. The issues on appeal are (1) whether the trial court erred in granting a tax injunction on a portion of the tax assessment; and (2) whether the court erred in fixing a leasehold assessment on a parcel of land, determining the tax thereon and entering judgment against plaintiff. We reverse the judgment as to Parcel B.

Plaintiff is a lessee of real property from the Chicago Regional Port District (District), a municipal corporation. Pursuant to statute, all of the District's property is exempt from taxation, "provided that a tax may be levied upon a lessee of the District by reason of the value of a leasehold estate separate and apart from the fee, or upon such improvements as are constructed and owned by others than the Port District." Ill. Rev. Stat. 1975, ch. 19, par. 154.1, and ch. 120, par. 500.19.

In 1965, plaintiff entered into a lease for three parcels of tax-exempt land referred to as A, B and C. Parcel A is improved; Parcels B and C are vacant. Parcels A and C are not involved in this appeal.

In 1975 (the quadrennial year) the assessment on Parcel B, described as Vol. 296, Permanent Real Estate Index Number 25-26-600-001-8023, was $434,904. On plaintiff's complaint to the board of appeals, the assessment was reduced to $39,096, resulting in a tax of $4,886.56. In 1976, (a nonquadrennial year), the assessor assessed Parcel B in the amount of $434,904, resulting in a tax of $54,190.88.

On October 12, 1977, plaintiff filed a second amendment to its amended complaint which set forth the following: Count II requested a permanent injunction based on the allegation that defendants erroneously

included as a part of the real estate on Parcel B, two gantry cranes which were not real estate, but were personal property and were owned by Max Schlossberg Company; count III requested an injunction based on the assessor's failure to follow the statute pertaining to required notice prior to increase on the 1976 taxes; count IV alleged that a permanent injunction should issue because the assessor failed to follow the guidelines set forth in *People ex rel. Korzen v. American Airlines, Inc.* (1967), 39 Ill. 2d 11, 233 N.E.2d 568; count V alleged that there was a 1100% increase in assessed value from 1975 to 1976 and that an injunction should issue; count VI alleged that a permanent injunction should issue because both the leasehold and the improvements were assessed and either the value of the leasehold or the improvements should have been assessed.

At trial, John Schlossberg, president of Dockside and chairman of the board of Max Schlossberg Company (Max) testified that Parcel B was vacant in 1976 and that the two gantry cranes located on the parcel were owned by Max. The cranes were self-propelled, mounted on wheels, and ran on tracks 32 feet apart. They were used for the handling of commodities and for stevedore work on vessels. They were purchased in 1967 and the cost was in excess of $500,000 for the two of them. When they were purchased, a use tax of $26,346.95 was paid to the State of Illinois. Emesco Warehousing, Marine Terminal Corporation (Emesco) was the operator of the facilities leased from the District. The cranes were leased by Max to Emesco. Schlossberg is the president of Emesco and owns the outstanding shares of Emesco. Schlossberg testified that he and members of his family owned the outstanding shares of both Dockside and Max Schlossberg Corporations.

Schlossberg identified a verified complaint, in case No. 72CH 632, in which Max was one of the plaintiffs and the State Director of Revenue and other State tax officials were defendants. The complaint alleged that the cranes involved in the pending case were not personal property but were real property and as such a use tax was not due the State of Illinois. In addition, Schlossberg identified the order entered by Judge Covelli in case No. 72CH 632, entered on April 3, 1972, which held that the cranes were personal property and a use tax was due on them. The court's finding denied relief based on plaintiff's theory that the cranes were real estate. Both the complaint and order were admitted into evidence. The order further held that a use tax was due based on $473,230, the cost of the cranes.

Later in the trial, counsel for plaintiff admitted to the court that personal property taxes on the cranes for 1972, 1973, 1974, 1975 and 1976 had not been paid.

Kenneth L. Kaval, director of appraisal for the Cook County Assessor's office, testified under section 60 of the Civil Practice Act (Ill.

Rev. Stat. 1975, ch. 110, par. 60), that Richard Martin, an employee of the Assessor's office, arrived at the 1976 assessed valuation of $434,904 in the following manner:

> "He valued the leasehold and the improvements thereon, determined an economic rent; used the Inwood method of capitalization, came up with a market value of $1,872,061. Took 40 percent of that as the assessment ratio and arrived at an assessed value of $434,904."[1]

Kaval further testified that one of the county assessor's permanent record cards indicated a full assessment of $2,000,000 valuation of the cranes that was depreciated to $1,800,000. This record card was admitted into evidence. He also testified to the method of computing the assessed valuations for tax years 1974 and 1975.

Paul Sally, professor of mathematics at the University of Chicago, testified that he computed the value of the leasehold of Parcel B for 1975 by applying the formula set forth in the *American Airlines Case* (*People ex rel. Korzen v. American Airlines, Inc.* (1967), 39 Ill. 2d 11, 233 N.E.2d 568). He computed the "market rental" of the lease by using the "current contract rent" stated in the lease. He also used the same procedure in computing the "fair cash value" of the lease for 1976. On cross-examination, he admitted that he had never appraised property for a fee prior to this time nor had he viewed the property in question.

Defendants moved to strike Sally's testimony as being inconsistent with the holding of *People ex rel. Korzen v. American Airlines* because the formula established in that case requires the lease to be valued in accordance with the "annual market rental," and not the "contract rental." The trial court admitted his testimony but found it unconvincing and not in accordance with *People ex rel. American Airlines.*

On direct examination, Stuart Goldstand, treasurer of Max, identified invoices which revealed that each of the gantry cranes cost $289,393.25. In addition, he identified real estate tax bills that were paid by plaintiff for 1975 and 1976 for Parcel B.

Daniel J. Pierce, chief deputy assessor, denied ever having received a written request from Max stating that the cranes located on Parcel B should be placed on the personal property rolls.

At the close of plaintiff's case, defendants moved for a finding in favor of defendants. The trial court in its final order found that as to Parcel B, the assessor in 1976 assessed both the leasehold and the two re-volving cranes, which he believed to be improvements. The court found that the fair cash value of the cranes was $473,230, which was the

---

[1] Kaval's testimony was obviously mistaken. Forty percent of $1,872,061 is not equal to $434,904. However, plaintiff did not request Kaval to review the worksheet that Kaval had brought to court so that his testimony could have been more probative.

figure previously determined by Judge Covelli upon which a use tax should be assessed, and that the cranes were not real estate, but personal property not owned by plaintiff. The court deducted the fair cash value of the cranes from the fair cash value of the entire assessment and held that the portion of the assessment based on the cranes was unauthorized by law and void. Further equitable relief on the remainder of the assessment was denied. From this order, plaintiff appeals and defendants cross-appeal.

OPINION

The threshold issue is whether the trial court improperly granted a tax injunction because the tax was not unauthorized by law and void. We find merit in defendants' claim that the court erred in issuing the injunction.

Section 3.1 of the Chicago Regional Port District Act and section 19.19 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 19, par. 154.1; ch. 120, par. 500.19) exempt from taxation all property owned by that or any other port district, " * * * provided that a tax may be levied upon a lessee of the District by reason of the value of a leasehold estate separate and apart from the fee, or upon such improvements as are constructed and owned by others than the Port District." Here the evidence is undisputed that an employee of the assessor's office valued both the leasehold and the improvements thereon.

■■■ The general rule that applies in the field of taxation is that where a taxpayer has an adequate remedy at law equity will not assume jurisdiction unless the tax is unauthorized by law or is levied upon exempt property. (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 306 N.E.2d 299; *La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 312 N.E.2d 252.) The remedy provided by law for the recovery of illegal taxes paid on real estate is the statutory remedy of paying the tax under protest and filing an objection to the application for judgment. Ill. Rev. Stat. 1975, ch. 120, pars. 675, 716.

Plaintiff contends that the assessment on Parcel B is a tax "unauthorized by law" for two reasons: (1) that the assessor based his assessment on the value of the leasehold and the improvements, while the statutes plainly provide that the assessment be based either upon the value of the leasehold or improvements, not both; and (2) that the revolving cranes that the assessor included as improvements were not real estate, but were the personal property of Max. The trial court enjoined a portion of the real estate tax as being unauthorized by law and void. Thus, plaintiffs argue, the tax fits into one of the exceptions stated in *Clarendon* for which equitable relief is allowed, regardless of the availability of an adequate remedy at law. We cannot agree.

Defendants maintain that this is not a proper case for equitable relief because the assessor had statutory authority to tax plaintiff's leasehold interest under section 19.19 of the Revenue Act (Ill. Rev. Stat. 1975, ch. 120, 500.19) and the defect complained of was an irregularity for which the proper remedy is at law. Three cases dealing with this issue are *Goodyear Tire & Rubber Co. v. Tierney* (1952), 411 Ill. 421, 104 N.E.2d 222, *Lackey v. Pulaski Drainage District* (1954), 4 Ill. 2d 72, 122 N.E.2d 257, and *Lakefront Realty Corp. v. Lorenz* (1960), 19 Ill. 2d 415, 167 N.E.2d 236.

In *Goodyear* the taxpayer sought, through a declaratory judgment action, a determination that its interest in the plant it leased from the United States was improperly assessed on the value of the tax exempt fee, rather than on the value of the leasehold. Additionally, the taxpayer maintained that the imposition and collection of the tax could be restrained by injunction. The court rejected that contention and found that the erroneous action of the assessors in assessing the interest of the Goodyear Company at the full value of the fee only went to the assessment and gave the taxpayer no basis for a claim to exemption. Furthermore, the court held, the taxpayer's real complaint was not that it was assessed, but that the figure assessed was too high. Consequently, it did not involve the attempted imposition of a tax unauthorized by law or an attempt to levy upon exempt property and was not a proper case for injunctive relief. Further, the court held that the taxpayer could not maintain a declaratory judgment action but should have proceeded to seek relief under the Revenue Act.

In *Lackey* the taxpayers were landowners of territory that had been annexed to a drainage district. Their complaint alleged the drainage district assessment against their property was illegal and void because numerous statutory requirements had not been met before entry of the order annexing the property to the district. In rejecting the contention that the tax was not authorized by law, the court stated: "They [the taxpayers] have by their proof shown not the absence of statutory authorization for the original imposition of this tax, but rather, if anything, they have shown that the classification and levying of this assessment was done pursuant to statutory authorization but in an irregular and erroneous manner." 4 Ill. 2d 72, 78, 122 N.E.2d 257, 260.

■■ In *Lakefront Realty Corp.* the taxpayer sought to enjoin the county treasurer from disbursing allegedly excessive taxes. It was argued that .022% of the total county rate of .282% had been levied to produce revenue in excess of the appropriated needs and that this excess was an unauthorized tax. The court held:

> "In view of the express statutory authority given the county officials to make the estimates in question, as well as the judicial

construction which has been placed upon such grant of authority, it is manifest that the issue here pertains to an erroneous or irregular tax. The power to levy the tax was not wanting, nor was the tax illegal *per se*, and the sole question for determination is whether, under the facts and circumstances peculiar to this case, the county officials made a mistake in judgment and abused their discretion·in making the challenged estimates as they did." (19 Ill. 2d 415, 421, 167 N.E.2d 236, 240.)

The rule that an injunction will not be issued to enjoin a tax for mere irregularities is also stated in *Owens-Illinois Glass Co. v. McKibbin* (1943), 385 Ill. 245, 52 N.E.2d 177; *North Pier Terminal Co. v. Tully* (1976), 62 Ill. 2d 540, 343 N.E.2d 507, and *Inolex Corp. v. Rosewell* (1978), 72 Ill. 2d 198, 380 N.E.2d 775. Moreover, these cases set forth the principle that if officers authorized to make the assessment make it, then mere procedural irregularities under which it is made cannot give the court a basis to restrain its collection.

■■ In the pending case, the assessor possessed statutory authority to tax either the leasehold or the improvements. He levied an assessment on both. Plaintiff owns a leasehold and it is apparent that a tax is due under section 19.19 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, 500.19). In that respect, plaintiff in 1976 paid under protest the leasehold tax which was due on the assessed value of the leasehold in 1975. Under the rationale of *Goodyear Tire and Rubber Co., Lackey* and *Lakefront Realty Corp.*, which we find dispositive here, the tax in question was authorized although irregular by being over-inclusive. Although the assessment was not wholly unauthorized and void, the court improperly intervened to enjoin the collection of the tax. Plaintiff had an adequate remedy at law by way of paying the taxes under protest and filing objections to the application for judgment.

We think the reason for denying equitable relief in this type of case was stated in *Ames v. Schlaeger* (1944), 386 Ill. 160, 166, 53 N.E.2d 937 and is appropriate as the governing principle in such cases:

> "The question of whether, in a particular case, equity will assume jurisdiction depends upon the merits of the particular case as disclosed by the facts and circumstances set up in the complaint. * * * To permit tax objections * * * to be tried by injunction would hopelessly disrupt the orderly administration of the tax-collecting machinery, thereby embarrassing and deranging the operations of the government and causing serious detriment to the public. The extraordinary power of injunction, for cogent reasons of public policy, should be exercised very cautiously when

important public interests are involved." *E.g., People ex rel. Williams v. McDonald* (1970), 44 Ill. 2d 349, 353, 255 N.E.2d 400, 402.

■■ In addition, we note that plaintiff failed to establish that a valuation of the leasehold according to the formula established in *People ex rel. Korzen v. American Airlines, Inc.* (1967), 39 Ill. 2d 11, 18-19, 233 N.E.2d 568, 572, would produce an assessment less than the one arrived at by the assessor. In *American Airlines* the court held that determination of the fair cash value of a leasehold requires determining the current market rental for the property; but because the rent is to be paid in future installments and not a lump sum, the present value of those future installments must be computed by capitalizing the current annual market rental over the unexpired term of the lease. The court further found that using the value of the fee in computing the value of the leasehold was permissible, but, there the court had concluded that valuation of the fee was in actuality more beneficial to the taxpayer, since the value of the fee appeared to be less than the value of the leasehold.

In the present case, testimony by Professor Sally was introduced to establish that the leasehold was overvalued, but the present value of the "market rental" for the remainder of the term of the lease was determined by using the "current contract rent." Defendants moved to strike this testimony as not being in accordance with *American Airlines* where the court held that "current market rent" was the correct rental to discount. The trial court admitted the testimony into evidence but properly accorded it little probative value.

In view of our holding that the court should not have interfered with the tax assessment and collection by granting injunctive relief it is unnecessary to consider the other issue raised.

The portion of the judgment of the circuit court granting the injunction as to Parcel B, is reversed, and the judgment fixing the leasehold assessment on Parcel B and the tax thereon is reversed.

Reversed.

LORENZ and MEJDA, JJ., concur.