APEX OIL COMPANY, Plaintiff-Appellant, *v.* MICHAEL HENKHAUS, County Treasurer and Ex-Officio Collector for the County of Madison, *et al.*, Defendants-Appellees—(Apex Oil Company, Plaintiff-Appellant, *v.* ILLINOIS PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellees).

Fifth District   No. 82—422

Opinion filed September 2, 1983.—Rehearing denied September 29, 1983.

John Dale Stobbs, of Stobbs and Sinclair, of Alton, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Edward M. Kay, Assistant Attorney General, of counsel), for appellees Illinois Property Tax Appeal Board and Members of the Illinois Property Tax Appeal Board.

Don Weber, State's Attorney, of Edwardsville (J. Thomas Long, Assistant State's Attorney, of counsel), for appellees Michael Henkhaus *et al.*

JUSTICE KARNS delivered the opinion of the court:

The appellant, Apex Oil Company, brought these actions, consolidated on appeal, for declaratory judgment and injunctive relief against certain officials of Madison County concerned with the assessment and collection of property taxes and for administrative review of an adverse decision of the Illinois Property Tax Appeal Board, contesting the assessment of its leasehold property located within the Tri-City Regional Port District, Madison County, Illinois. The Circuit Court of Madison County resolved these proceedings adversely to Apex.

Apex is the lessee of approximately three acres of land along the Mississippi River in Madison County within the Port District. The land is owned by the United States of America and is leased to the Port District, which, in turn, subleases the property here involved to Apex. Located on the leasehold estate are two storage tanks owned by the Port District and six storage tanks erected by Apex. The parties state that these tanks are owned by Apex, but the record is silent as to the ownership of the tanks at the termination of the lease, which is not in evidence.

Section 3.1 of the Tri-City Regional Port District Act (Ill. Rev. Stat. 1979, ch. 19, par. 286.1) for the year involved provided:

"All property of every kind belonging to the Port District shall be exempt from taxation, provided that taxes may be assessed and levied upon a lessee of the District by reason of the value of the leasehold estate separate and apart from the fee *and* upon such improvements as are constructed and owned by others than the District. All property of the District shall be construed as constituting public property owned by a municipal corporation and used exclusively for public purposes within the provisions of Section 19.19 of the 'Revenue Act of 1939', filed May 17, 1939, as heretofore or hereafter amended." (Emphasis added.)

Public Act 81—1414, effective January 1, 1981, amended section 3.1 of the Act by substituting the disjunctive *"or"* in place of *"and"*; in all other respects the statute remained the same. The parties agree that no legislative history can be found that would indicate the purpose of the amendment.

Section 19.19 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 500.19) exempts from taxation:

"All property of every kind belonging to the Chicago Regional Port District or any other port district created by the legislature of this State, provided that a tax may be levied upon a lessee of such a District by reason of the value of a leasehold estate separate and apart from the fee, *or* upon such improvements as are constructed and owned by others than the Port District." (Emphasis added.)

For the year 1979, the tax assessor of Venice Township, where the Port District is located, and the supervisor of assessments of Madison County, assessed both the value of Apex' leasehold, including the two storage tanks owned by the Port District, by capitalizing the annual rental of the lease, and the improvements, the storage tanks owned by Apex, by computing the replacement cost of the tanks. The

leasehold estate was valued at $77,260 and the improvements owned by Apex at $252,200. Apex does not contend that the values thus obtained were excessive or that the method of assessment was improper, as the method used to value the leasehold estate was that approved by the supreme court in *People ex rel. Korzen v. American Airlines, Inc.* (1968), 39 Ill. 2d 11, 233 N.E.2d 568. In that case American Airlines paid the city of Chicago a monthly rental for ground at O'Hare International Airport and an additional monthly rental for a hangar owned by the city. Section 20 of the Revenue Act of 1939 (Ill. Rev. Stat. 1965, ch. 120, par. 501(2)), dealing with the valuation of real property, provided that "[e]ach taxable leasehold estate shall be valued at its fair cash value, estimated at the price it would bring at a fair, voluntary sale." The court approved a method of valuation that capitalized the fair cash value of the current market rent over the unexpired term of the lease. In that case, however, there were no improvements owned by the lessee. Here, the storage tanks owned by Apex were assessed in the same manner as other like property in the county.

Apex' first argument is that the special tax treatment of leasehold estates established by section 3.1 of the Tri-City Regional Port District Act, which authorizes taxation of both the value of the leasehold *and* the improvements owned by others, violates article IV, section 13, of the Illinois Constitution of 1970. This argument was not raised in the pleadings or in the trial court; we could consider it waived, but because of its importance and the likelihood that it will reoccur, we will address it.

That section provides that "[t]he General Assembly shall pass no special or local law when a general law is or can be made applicable." The general law relating to port districts, section 19.19 of the Revenue Act of 1939, it is argued, only allows taxation of the value of the leasehold estate *or* the improvements owned by others.

The general principle of taxation contained in section 20 of the Revenue Act of 1939 is that all property is to be valued for tax purposes at a percentage of its fair cash value. Considering that statutes exempting property from taxation must be strictly construed (*Follett's Illinois Book & Supply Store, Inc., v. Isaacs* (1963), 27 Ill. 2d 600, 605, 190 N.E.2d 324, 327), it could hardly be contended that the General Assembly does not have the power to authorize the taxation of both the leasehold estate and improvements erected thereon, as the general rule is that both should be subject to taxation, just as any property owner pays property taxes on the value of his land and the improvements erected thereon. It is clear that the General Assembly

has the power to classify a leasehold as real property for purposes of taxation and to base the value of the leasehold on the value of the fee interest. (*Dee-El Garage, Inc. v. Korzen* (1972), 53 Ill. 2d 1, 289 N.E.2d 431, *rev'd on other grounds.*) So, our first inquiry must be to determine the manner of taxation of leaseholds provided for in the general law relating to taxation of Port Districts before we need consider any violation of constitutional principles.

*Rosewell v. Bulk Terminals Co.* (1979), 73 Ill. App. 3d 225, 390 N.E.2d 1294, dealt with the taxation of leasehold property in a port district. Involved there was taxation of lessees of property located in the Chicago Port District under section 19.19 of the Revenue Act of 1939. Notwithstanding the use of the disjunctive "or" in section 19.19, the court approved the assessment of both the leasehold estate, under the *American Airlines, Inc.* formula *and* improvements erected on the leasehold property by the lessee, Bulk Terminals, Inc. There the taxpayer contended that the value of the improvements placed on the leasehold by the lessee could not be included in the valuation of the lessee's leasehold interest. The court found this argument to be without merit, and noting that the improvements were for the benefit of the lessee to enable it to enjoy its leasehold estate, stated that it made no difference whether the lessee owned the improvements or leased them from the Port District, as in either case the market value of the leasehold was enhanced. The court stated:

> "Therefore, it is the market rental for the land as improved, rather than the contractual rent or the market rental for unimproved land, that is the appropriate basis for computing the fair cash value of the leasehold. An examination of the cases cited by the court in *American Airlines* indicates that this result obtains whether the improvements are owned, as in *American Airlines*, by the lessor (see *People v. International Salt Co.* (1908), 233 Ill. 223, 84 N.E. 278; *Delta Air Lines, Inc. v. Coleman* (1963), 219 Ga. 12, 131 S.E.2d 768), by the lessee (see *City of Chicago v. University of Chicago* (1922), 302 Ill. 455, 134 N.E. 723), or, as here, by the lessee but under agreement that the improvements revert to the lessor on the termination of the lease. See *People ex rel. Paschen v. Hendrickson-Pontiac, Inc.* (1956), 9 Ill. 2d 250, 137 N.E.2d 381; *DeLuz Homes, Inc. v. County of San Diego* (1955), 45 Cal. 2d 546, 290 P.2d 544; see also *Texas Company v. County of Los Angeles* (1959), 52 Cal.2d 55, 338 P.2d 440, *Shaia v. City of Richmond* (1967), 207 Va. 885, 153 S.E.2d 257; Annot., 54 A.L.R.3d 402, 515-34 (1973)." 73 Ill. App. 3d 225, 237-238, 390 N.E.2d 1294,

1305.

While the court noted the use of the disjunctive "or" in section 19.19 of the Revenue Act of 1939, it apparently attached no significance to this as it found that the taxpayer had failed to establish an overassessment.

*Dockside Development Corp. v. Tully* (1979), 78 Ill. App. 3d 482, 396 N.E.2d 1155, involved another lease of property from the Chicago Regional Port District. There the assessor valued both the leasehold and improvements located thereon, two gantry cranes. The taxpayer contended that the cranes were personal property and in any event, under the statute, section 19.19 of the Revenue Act of 1939, it was improper to assess both the value of the leasehold and the improvements. Without discussion of the meaning of the statute, in answer to this contention, the court stated that the taxpayer had failed to establish that the valuation of the leasehold according to the *American. Airlines, Inc.* formula would produce an assessment lower than the one determined by the assessor. Implicit in this statement is a determination that the fair cash value of an improved leasehold requires valuation of the improvement placed on the leasehold in arriving at the value of the current market rental of the property under the *American Airlines, Inc.* formula. The court further noted that it was permissible under *American Airlines, Inc.* to use the value of the fee, which would include the value of the improvements, in assessing the value of the leasehold.

■ We believe the use of the disjunction "or" in section 19.19 is of no significance as it appears to us unlikely that the legislature intended to require local assessing authorities to choose between valuing the leasehold without consideration of the value of improvements erected by others or the improvements erected by others without consideration of the current market rental value of the lease. We believe the proper basis for computing the fair cash value of any leasehold must be market value of the land as improved. Ownership of the improvements undoubtedly is important in determining annual rental, but it should make no difference that the improvements are owned by the lessor, or by the lessee or others as in either case the market value of the leasehold for tax purposes is enhanced.

It may be here the assessing authorities did not value the improvements in accordance with the *American Airlines, Inc.* formula as they stated that the tanks owned by Apex were assessed by valuing their replacement cost. (See *People ex rel. Rosewell v. Dee El Garage, Inc.* (1977), 51 Ill. App. 3d 382, 366 N.E.2d 585.) However, as in *Bulk Terminal Co.* and *Dockside Development Corp.*, the taxpayer

here offered no other evidence of value, contested the assessor's valuation or offered to prove that a lower assessment would result by valuing the improvements according to the *American Airlines, Inc.* formula.

■■ ■ We think the proper interpretation to be placed on section 19.19 of the Revenue Act of 1939 is that a tax may be levied upon the value of the leasehold which includes improvements erected thereon by the lessor, or upon the leasehold *and* improvements erected thereon by others, so that regardless of ownership of the improvements, they will not be exempt from taxation. In so construing the statute, we are mindful of the rule of construction that statutes exempting property from taxation must be strictly construed. We are also mindful that the disjunctive "or" and conjunctive "and" are not always employed in statutory drafting to express the true legislative purpose, and when it seems apparent that a literal reading would produce a result not intended, the literal meaning may be altered to express the true legislative purpose. An interesting and learned discussion of the subject appears in *People v. McGrenera* (1982), 108 Ill. App. 3d 953, 439 N.E.2d 1020; see also *Coalition for Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453, 359 N.E.2d 138.

Apex makes several arguments addressed to what it perceives to be the multiple and unfair taxation of property within the Tri-County Regional Port District. We believe there is no merit to these arguments, but they will be briefly considered.

The property within the Port District is flood control land owned by the Federal Government. It is leased to the Port District for an annual rental; the amount of rent paid by the Port District does not appear in the record. Under 33 U.S.C. sec. 701c—3 (1976), 75% of the monies received by the Federal Government from the Port District for the lease of this land is remitted each year to the State of Illinois. The State may expend the money in any way it chooses. It does, in fact, remit the sums received to the treasurer of Madison County, and the monies are placed in the general fund of the county. Apex claims, without the citation of any relevant authority, that Madison County is in some way estopped from imposing taxes on the leasehold because it has received these monies. We do not understand how Apex is legitimately concerned with the largess of the Federal Government. The monies that reach the Madison County general fund are not tax revenues, nor could Madison County levy a tax on the Federal Government, and are not distributed to the several taxing bodies in Venice Township and Madison County as funds derived from taxation.

Equally unpersuasive is Apex' argument that the replacement in-

come tax imposed by sections 201(c) and 201(d) of the Illinois Income Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 2—201(c), (d)) and the prohibition of reclassifying personal property as real property contained in section 18.1 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 499.1; see *Central Illinois Light Co. v. Johnson* (1981), 84 Ill. 2d 275, 418 N.E.2d 696) somehow impose an unreasonable tax burden on Apex. Apex never filed a personal property tax return. The storage tanks were never taxed as personal property. While it is understandable that a taxpayer might well complain about an additional tax burden, his remedy lies with the legislative branch of government. There is nothing illegal or unconstitutional that will afford a judicial remedy.

■ One further matter requires comment. At one time the trial court enjoined the assessment, levy and extension of taxes on the subject leasehold for the 1980 tax year. The injunction was dissolved in the final judgment. The injunction was clearly improper as the taxpayer had an adequate administrative remedy to contest any tax levied on his property by paying the tax under protest and filing appropriate objection to the collector's application for judgment. See *Dockside Development Corp. v. Tully* (1979), 78 Ill. App. 3d 482, 396 N.E.2d 1155.

The judgment of the circuit court of Madison County is affirmed.

Affirmed.

KASSERMAN and JONES, JJ., concur.