# Illinois Official Reports

## Appellate Court

---

### *Iwan Ries & Co. v. City of Chicago*, 2018 IL App (1st) 170875

---

| | |
|---|---|
| Appellate Court Caption | IWAN RIES & CO., an Illinois Corporation; CIGAR ASSOCIATION OF AMERICA, INC., a New York Corporation; ILLINOIS ASSOCIATION OF WHOLESALE DISTRIBUTORS, an Illinois Corporation; ILLINOIS RETAIL MERCHANTS ASSOCIATION, an Illinois Corporation; INTERNATIONAL PREMIUM CIGAR AND PIPE RETAILERS ASSOCIATION, a New York Corporation; NATIONAL ASSOCIATION OF TOBACCO OUTLETS, INC., a Minnesota Corporation; and ARANGOLD CORPORATION, d/b/a Arango Cigar Co., an Illinois Corporation, Plaintiffs-Appellees, v. THE CITY OF CHICAGO and ERIN KEANE, in Her Capacity as the Comptroller of the Department of Finance Within the City of Chicago, Illinois, Defendants-Appellants. |
| District & No. | First District, Fourth Division<br>Docket No. 1-17-0875 |
| Filed | December 20, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-L-50356; the Hon. Ann Collins-Dole, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Edward N. Siskel, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Irina Y. Dmitrieva, Assistant Corporation Counsel, of counsel), for appellants. |

Stanley R. Kaminski, Amy E. McCracken, and Elinor H. Murárová, of Duane Morris LLP, of Chicago, for appellees.

Panel
JUSTICE REYES delivered the judgment of the court, with opinion. Presiding Justice McBride and Justice Burke concurred in the judgment and opinion.

**OPINION**

¶ 1 The instant appeal arises from the circuit court's grant of partial summary judgment in favor of plaintiffs, Iwan Ries & Co.; Cigar Association of America, Inc.; Illinois Association of Wholesale Distributors; Illinois Retail Merchants Association; International Premium Cigar and Pipe Retailers Association; National Association of Tobacco Outlets, Inc.; and Arangold Corporation d/b/a Arango Cigar Co., which operated to strike down the City of Chicago Other Tobacco Products Tax Ordinance (ordinance) (Chicago Municipal Code § 3-49 (added Mar. 16, 2016)). The circuit court found that the City of Chicago's home rule authority to enact the ordinance was preempted by section 8-11-6a(2) of the Illinois Municipal Code (65 ILCS 5/8-11-6a(2) (West 2016)). Defendants, the City of Chicago and Erin Keane in her capacity as the Comptroller of the Department of Finance (collectively the City), appeal, and for the reasons that follow, we reverse the judgment of the circuit court.

¶ 2 BACKGROUND

¶ 3 The center of the dispute in this matter is the ordinance enacted by the Chicago City Council on March 16, 2016, which created flat taxes on units of non-cigarette tobacco products including smoking tobacco, smokeless tobacco, pipe tobacco, little cigars, and large cigars sold and used within Chicago. Chicago Municipal Code § 3-49-30 (added Mar. 16, 2016).

¶ 4 Plaintiffs filed a verified complaint for declaratory judgment and injunctive relief on May 26, 2016, requesting the circuit court declare the ordinance unconstitutional pursuant to article VII, section 6(g), of the Illinois Constitution and to permanently enjoin its enforcement. Ill. Const. 1970, art. VII, § 6(g). Plaintiffs maintained that the City's home rule power to tax non-cigarette tobacco products was preempted by section 8-11-6a(2) of the Municipal Code (65 ILCS 5/8-11-6a(2) (West 2016)), which provides that "a home rule municipality that has not imposed a tax based on the number of units of cigarettes or tobacco products before July 1, 1993, shall not impose such a tax after that date." Plaintiffs alleged that the City could not impose this new tax on non-cigarette products because it had previously taxed only cigarettes (not non-cigarette products) before July 1, 1993.

¶ 5 Subsequently, plaintiffs filed a three-count amended complaint for declaratory and injunctive relief: count I sought a declaratory judgment that the ordinance was unauthorized because it was preempted by section 8-11-6a(2) of the Municipal Code; count II sought a permanent injunction; and count III sought a declaratory judgment and permanent injunction as to other regulatory provisions not at issue in this appeal that imposed price floors for

non-cigarette tobacco products, prohibited the use of coupons, and imposed minimum packaging requirements for certain tobacco products.

¶ 6      Thereafter, the parties filed cross-motions for partial summary judgment on counts I and II of the amended complaint, addressing the sole issue of whether section 8-11-6a(2) of the Municipal Code preempts the City's home rule authority to impose the ordinance. The parties were in agreement that the City had in place, as of July 1, 1993, a tax on cigarettes. Plaintiffs maintained that the plain language of section 8-11-6a(2) of the Municipal Code only allowed a home rule authority to enact a tax on "tobacco products" if such a tax was in existence prior to July 1, 1993. Because the City had not enacted a tax on the other tobacco products as listed in the ordinance, they could not do so now. In response, the City maintained that it was not preempted from enacting the ordinance because it was merely required to have *a* tax in place before July 1, 1993, on either cigarettes or "tobacco products."

¶ 7      After the matter was fully briefed and argued, the circuit court ruled that section 8-11-6a(2) of the Municipal Code preempted the City's authority to enact the ordinance and thus granted plaintiffs' motion for partial summary judgment and denied the City's motion. Thereafter, the circuit court entered an order pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). This appeal followed.

¶ 8                                       ANALYSIS

¶ 9      This appeal requires us to determine whether or not section 8-11-6a(2) of the Municipal Code (65 ILCS 5/8-11-6a(2) (West 2016)) preempts the City's home rule authority to enact the ordinance that taxes tobacco products other than cigarettes. See Chicago Municipal Code § 3-49-020 (added Mar. 16, 2016) (specifically excluding from its definition of "[o]ther [t]obacco [p]roducts" cigarettes, electronic cigarettes, and liquid nicotine products).

¶ 10      The City contends that the ordinance is a valid exercise of its home rule authority. The City maintains that because it had imposed a tax on cigarettes prior to July 1, 1993, it falls within the exception of section 8-11-6a(2) of the Municipal Code, which it contends must be read to provide for a tax on *either* cigarettes *or* non-cigarette tobacco products prior to July 1, 1993. 65 ILCS 5/8-11-6a(2) (West 2016). The City reasons that because it taxed cigarettes, a tax within the category of cigarettes or non-cigarette tobacco products, prior to July 1, 1993, the ordinance is valid. The City concedes that no tax on "tobacco products" other than cigarettes had been implemented prior to July 1, 1993.

¶ 11      In response, plaintiffs contend that section 8-11-6a(2) unambiguously provides that the City, a home rule municipality, cannot impose a tax on tobacco products unless the municipality imposed such a tax prior to July 1, 1993. According to plaintiffs, the use of the phrase "such a tax" in section 8-11-6a(2) refers to a tax on either "cigarettes or tobacco products." *Id.* Plaintiffs reason that, because "such a tax" is a singular modifier, it can only be referring to a separate tax on cigarettes or a separate tax on other tobacco products. Plaintiffs maintain that because the City did not impose a tax on tobacco products prior to July 1, 1993, the City is precluded from enacting the ordinance.

¶ 12      We first set forth our standard of review. This matter comes before us after the disposition of cross-motions for summary judgment. Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits, viewed in a light most favorable to the nonmovant, fail to establish that a genuine issue of material fact exists, thereby entitling the moving party to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Fox v.*

*Seiden*, 2016 IL App (1st) 141984, ¶ 12. When, as here, parties file cross-motions for summary judgment, they agree that no genuine issues of material fact exist and they invite the court to decide the case as a matter of law based on the record. *Casey's Marketing Co. v. Hamer*, 2016 IL App (1st) 143485, ¶ 11. We review a circuit court's decision to grant summary judgment *de novo*. *Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, ¶ 8. As the principal issue we are asked to resolve necessarily involves matters of statutory construction, we also observe our review in that regard is *de novo*. *Stasko v. City of Chicago*, 2013 IL App (1st) 120265, ¶ 31. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Midwest Gaming & Entertainment, LLC v. County of Cook*, 2015 IL App (1st) 142786, ¶ 46.

¶ 13　　To determine whether or not the City's home rule authority to enact the ordinance is preempted by section 8-11-6a(2), we must necessarily begin by discussing our constitution and the power it grants to home rule units. The relationship between our state and local governments was aptly recounted by our supreme court in *City of Chicago v. StubHub, Inc.*, 2011 IL 111127:

> "Under the 1870 Illinois Constitution, the balance of power between our state and local governments was heavily weighted toward the state. The 1970 Illinois Constitution drastically altered that balance, giving local governments more autonomy. *Schillerstrom Homes, Inc. v. City of Naperville*, 198 Ill. 2d 281, 286-87 (2001); *City of Evanston v. Create, Inc.*, 85 Ill. 2d 101, 107 (1981) (quoting 4 Record of Proceedings, Sixth Illinois Constitutional Convention 3024). Municipalities now enjoy 'the broadest powers possible' (*Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 174 (1992)) under the Constitution." *Id.* ¶ 18.

The court went on to explain that section 6(a) of article VII, "gives municipalities any powers pertaining to their governments and affairs, including the power to tax, but not the power over matters such as divorce, real property, trusts, and contracts (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1621)." *Id.* ¶ 19. Thus, "[t]he framers' intent was clear: 'the powers of home-rule units relate to their own problems,' not problems more competently solved by the state." *Id.* (quoting 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1621). The court also observed that, "[t]he framers *** understood that further interpretation of section 6(a)'s intentionally imprecise language would fall to the judicial branch." *Id.* (citing 4 Record of Proceedings, Sixth Illinois Constitutional Convention 3052).

¶ 14　　Under the Illinois Constitution, except as limited by article VII, section 6, of the constitution, a home rule unit such as the City "may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). "Section 6(a) was written with the intention to give home rule units the broadest powers possible." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 30. Furthermore, the constitution expressly provides that the "[p]owers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m).

¶ 15　　The General Assembly, however, "may *** preempt the exercise of a municipality's home rule powers by expressly limiting that authority." *Palm*, 2013 IL 110505, ¶ 31. Under article VII, section 6(h), "[t]he General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit other than a taxing power."

- 4 -

Ill. Const. 1970, art. VII, § 6(h). With respect to the power to tax, "[t]he General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or function of a home rule unit not exercised or performed by the State." Ill. Const. 1970, art. VII, § 6(g).

¶ 16    "If the legislature intends to limit or deny the exercise of home rule powers, the statute must contain an express statement to that effect." *Palm*, 2013 IL 110505, ¶ 31. If the legislature does not do so, article VII, section 6(i), provides that "[h]ome rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i). Thus, the Illinois Constitution provides home rule units with the same powers as the sovereign, except when those powers are limited by the General Assembly. *City of Chicago v. Roman*, 184 Ill. 2d 504, 513 (1998) (citing *Triple A Services, Inc. v. Rice*, 131 Ill. 2d 217, 230 (1989)). Our supreme court has "consistently recognized that the home rule provisions of the Illinois Constitution are intended to 'eliminate or at least reduce to a bare minimum the circumstances under which local home rule powers are preempted by judicial interpretation of unexpressed legislative intention.' " (Internal quotation marks omitted.) *Palm*, 2013 IL 110505, ¶ 34 (quoting *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 186 (1992)); see also *Schillerstrom Homes, Inc. v. City of Naperville*, 198 Ill. 2d 281, 288 (2001); *Roman*, 184 Ill. 2d at 516.

¶ 17    In this instance, the parties agree that the legislature granted the City, a home rule unit, the authority to tax cigarettes pursuant to section 8-11-6(a) of the Municipal Code, which provides as follows:

> "Except as provided in Sections 8-11-1, 8-11-5, 8-11-6, 8-11-6b, 8-11-6c, and 11-74.3-6 on and after September 1, 1990, no home rule municipality has the authority to impose, pursuant to its home rule authority, a retailer's occupation tax, service occupation tax, use tax, sales tax or other tax on the use, sale or purchase of tangible personal property based on the gross receipts from such sales or the selling or purchase price of said tangible personal property. Notwithstanding the foregoing, *this Section does not preempt any home rule imposed tax such as the following*: *** (2) *a tax based on the number of units of cigarettes or tobacco products (provided, however, that a home rule municipality that has not imposed a tax based on the number of units of cigarettes or tobacco products before July 1, 1993, shall not impose such a tax after that date)*; ***. *** This Section is a limitation, pursuant to subsection (g) of Section 6 of Article VII of the Illinois Constitution, on the power of home rule units to tax." (Emphases added.) 65 ILCS 5/8-11-6a (West 2016).

What is at issue, however, is whether section 8-11-6a(2) of the Municipal Code preempts the City's authority to tax "tobacco products" as provided in the ordinance where the City had not imposed a tax specifically on "tobacco products" prior to July 1, 1993. The answer to this question requires us to interpret this particular section of the Municipal Code, which we do *de novo*. *Stasko*, 2013 IL App (1st) 120265, ¶ 31.

¶ 18    The fundamental objective of statutory construction is to ascertain and give effect to the drafter's intent. *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 268 (2010). The statutory language, given its plain and ordinary meaning, is the best indication of that intent. *Palm*, 2013 IL 110505, ¶ 48. "A reasonable construction must be given to each word, clause, and sentence of a statute, and no term should

be rendered superfluous." *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 21. When determining a statute's meaning, the statute should be read as a whole, with all relevant parts considered. *Gardner v. Mullins*, 234 Ill. 2d 503, 511 (2009). A court may not depart from the plain statutory language by reading into it exceptions, limitations, or conditions not expressed by the legislature. *In re Estate of Ellis*, 236 Ill. 2d 45, 51 (2009). "Where statutory language is clear and unambiguous, it will be given effect without resort to other aids of construction." *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 13.

¶ 19    "An examination of the validity of home rule authority requires the court to determine whether the questioned home rule ordinance is related to its government and affairs and whether the state legislature has preempted the exercise of the home rule power." *Page v. City of Chicago*, 299 Ill. App. 3d 450, 460 (1998). In this case, there is no question as to whether the ordinance is related to the City's government and affairs, rather the primary issue is whether section 8-11-6a(2) of the Municipal Code preempts the City's home rule authority to tax other tobacco products.

¶ 20    We begin by reviewing the history of the relevant provision of the Municipal Code as we find it to be both helpful and instructive. See *Illinois Chiropractic Society v. Giello*, 18 Ill. 2d 306, 312 (1960) (when a statute has been amended, courts are to construe the language of the amendment together with the original act).

¶ 21    Section 8-11-6a was originally enacted in 1988 and expressly limited a home rule municipality from imposing certain taxes on the use, sale, or purchase of tangible personal property. See Ill. Rev. Stat. 1989, ch. 24, ¶ 8-11-6a (stating this section "is a limitation, pursuant to subsection (g) of Section 6 of Article VII of the Illinois Constitution, on the power of home rule units to tax"). The legislature, however, allowed for certain exceptions to this rule and set forth seven categories where a home rule unit could impose a tax. See *id.* Section 8-11-6a, as originally enacted, provided in pertinent part as follows:

> "Except as provided in Section 8-11-1, 8-11-5 and 8-11-6, on and after September 1, 1990, no home rule municipality has the authority to impose, pursuant to its home rule authority, a retailer's occupation tax, service occupation tax, use tax, sales tax or other tax on the use, sale or purchase of tangible personal property based on the gross receipts from such sales or the selling or purchase price of said tangible personal property. Notwithstanding the foregoing, *this Section does not preempt any home rule imposed tax such as the following*: (1) a tax on alcoholic beverages, whether based on gross receipts, volume sold or any other measurement; (2) *a tax based on the number of units of cigarettes or tobacco products*; (3) a tax, however measured, based on the use of a hotel or motel room or similar facility; (4) a tax, however measured, on the sale or transfer of real property; (5) a tax, however measured, on lease receipts; (6) a tax on food prepared for immediate consumption and on alcoholic beverages \*\*\*; or (7) other taxes not based on the selling or purchase price or gross receipts from the use, sale or purchase of tangible personal property. \*\*\* This Section is a limitation, pursuant to subsection (g) of Section 6 of Article VII of the Illinois Constitution, on the power of home rule units to tax." (Emphases added.) *Id.*

¶ 22    Relevant to the issue in this case section 8-11-6a originally provided: "this Section *does not preempt* any home rule imposed tax such as the following \*\*\* (2) a tax based on the number of units of cigarettes or tobacco products." (Emphasis added.) *Id.* Thus, beginning on September 1, 1990, a home rule municipality, such as the City, was allowed to impose a tax based on the

selling or purchase price or gross receipts from the sale of cigarettes or tobacco products. See *id.*

¶ 23 The City maintains that "or" was employed in the first iteration of the statute in the inclusive sense and thus the statute allowed a home rule unit the power to tax either cigarettes, or non-cigarette tobacco products, or both. We agree with the City's interpretation. Viewing the statute as a whole, which we must (*Sinkus v. BTE Consulting*, 2017 IL App (1st) 152135, ¶ 14), it is evident that the legislature intended to create broad descriptions for the categories in section 8-11-6a. For example, when describing places of accommodations, the legislature employed the phrase "hotel or motel room or similar facility." Ill. Rev. Stat. 1989, ch. 24, ¶ 8-11-6a(3). The legislature also used the word "or" to put together different transactions involving real property. *Id.* ¶ 8-11-6a(4). Likewise, "cigarettes or tobacco products" is a wide category that describes goods that contain nicotine. A tenant of statutory construction is that "a word or phrase that is repeated in a statute is presumed to have the same meaning throughout." *Borg v. Village of Schiller Park Police Pension Board*, 111 Ill. App. 3d 653, 657 (1982). Thus, the legislature's original inclusive use of the word "or" in section 8-11-6a created broad categories where home rule units could impose taxes on the property stated in the seven exceptions.

¶ 24 In addition, our case law supports the conclusion that the word "or" can be used in an inclusive sense. See *Campbell v. Prudential Insurance Co. of America*, 15 Ill. 2d 308, 311 (1958). Whether "or" is used in the inclusive sense is determined by the context in which it is used. See *Coalition for Political Honesty v. State Board of Elections*, 65 Ill. 2d 453, 466 (1976); see also *Sinkus*, 2017 IL App (1st) 152135, ¶ 14 ("In interpreting a statute, we must view the statute as a whole, making sure not to read any of its language in isolation."). In this case, the circuit court concluded the "or" was used in the exclusive or disjunctive sense, relying on the case of *People v. Frieberg*, 147 Ill. 2d 326 (1992). We initially observe that *Frieberg* involved the interpretation of a criminal statute, but regardless, it did set forth the general proposition that, "As used in its ordinary sense, the word 'or' marks an alternative indicating the various members of the sentence which it connects are to be taken separately." *Id.* at 349 (citing *People v. Vraniak*, 5 Ill. 2d 384 (1955); *Campbell*, 15 Ill. 2d 308). While we do not disagree with this proposition, it is also true that "or" can mean "and" when considered in context to effectuate the legislature's intent.

¶ 25 To this end, we find the cases cited by the City to be instructive, as in those cases the reviewing courts examined the context in which the word "or" was employed to interpret the legislature's intent. See *Apex Oil Co. v. Henkhaus*, 118 Ill. App. 3d 273 (1983); *Thoman v. Village of Northbrook*, 148 Ill. App. 3d 356 (1986). In *Apex Oil Co.*, the plaintiff, a sublessee of a tract of land that was leased to the Tri-City Port District of Madison County, Illinois (Port District), from the United States of America, brought an action for declaratory judgment and injunctive relief against certain officials of Madison County regarding the assessment and collection of property taxes. *Apex Oil Co.*, 118 Ill. App. 3d at 274-75. While the plaintiff subleased the land and had erected six storage tanks thereon, two other storage tanks present on the property were owned by the Port District. *Id.* at 275. In 1979, the value of the plaintiff's leasehold was assessed to include the value of the leasehold estate as well as the improvements thereon, including the two storage tanks owned by the Port District. *Id.* at 275-76. The plaintiff disagreed with the assessment calculation and maintained that the taxes were not authorized on both the value of the leasehold and the improvements owned by others. *Id.* at 276. In

considering this claim, the reviewing court construed the language of the section 19.19 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, ¶ 500.19), which read in pertinent part:

> " 'All property of every kind belonging to the Chicago Regional Port District or any other port district created by the legislature of this State, provided that a tax may be levied upon a lessee of such a District by reason of the value of a leasehold estate separate and apart from the fee, *or* upon such improvements as are constructed and owned by others than the Port District.' " (Emphasis in original.) *Apex Oil Co.*, 118 Ill. App. 3d at 275 (quoting Ill. Rev. Stat. 1979, ch. 120, ¶ 500.19).

In determining whether the plaintiff should have been taxed on the value of its leasehold and the improvements constructed thereon, the reviewing court determined

> "the disjunction 'or' in section 19.19 is of no significance as it appears to us unlikely that the legislature intended to require local assessing authorities to choose between valuing the leasehold without consideration of the value of improvements erected by others or the improvements erected by others without consideration of the current market rental value of the lease." *Id.* at 278.

Accordingly, the court concluded that the proper interpretation of section 19.19 was that "a tax may be levied upon the value of the leasehold which includes improvements erected thereon by the lessor, or upon the leasehold and improvements erected thereon by others, so that regardless of ownership of the improvements, they will not be exempt from taxation." (Emphasis omitted.) *Id.* at 279. In reaching this conclusion, the *Apex Oil Co.* court recognized that "the disjunctive 'or' and conjunctive 'and' are not always employed in statutory drafting to express the true legislative purpose, and when it seems apparent that a literal reading would produce a result not intended, the literal meaning may be altered to express the true legislative purpose." *Id.*

¶ 26  Similarly, in *Thoman* this court construed certain language in the Road Construction Injuries Act (Ill. Rev. Stat. 1983, ch. 121, ¶ 314.1) to determine whether the defendants in a negligence case, consisting of a governmental agency and its employee, were exempted from liability. *Thoman*, 148 Ill. App. 3d at 357. There, the plaintiff suffered injuries when her automobile collided with defendant Daniel McGee's vehicle. *Id.* McGee was an employee of defendant Village of Northbrook and was engaged in road repairs while operating a vehicle owned by the Village of Northbrook at the time of the collision. *Id.* The plaintiff's lawsuit alleged two counts: (1) negligence and (2) violations of the Road Construction Injuries Act. *Id.* The defendants then moved to dismiss count II arguing that the language of the Road Construction Injuries Act exempted them from liability. *Id.* The trial court granted the motion, and the plaintiff appealed. *Id.*

¶ 27  On appeal, the reviewing court considered the following language of the Road Construction Injuries Act: " 'The provisions of this Act shall not apply to employees or officials of the State of Illinois or any other public agency engaged in the construction or the maintenance of highways and bridges.' " *Id.* (quoting Ill. Rev. Stat. 1983, ch. 121, ¶ 314.8). The plaintiff maintained that this section did not exempt local governments (such as the Village of Northbrook) and their employees from the duties and liabilities imposed by the statute and urged that "since the word 'or' is used in the phrase 'of the State of Illinois or any other public agency,' this phrase must be read in the disjunctive." *Id.* at 357-58. The plaintiff argued that based on this construction, the exemption was not intended to apply to any

governmental body but was only intended to apply to certain employees or officials of those governmental bodies. *Id.* at 358.

¶ 28    The reviewing court was not persuaded by the plaintiff's argument. In reaching the conclusion that the statute exempted government agencies as well as their employees and officials from the provisions of the Road Construction Injury Act, the court explained:

> "We are also mindful of the rule that the disjunction 'or' and conjunction 'and' are not always employed in statutory drafting to express the true legislative purpose, and when it seems apparent that a literal reading would produce a result not intended, the literal meaning may be altered to express the true legislative purpose. [Citation.] We believe the use of the disjunction 'or' in section 8 is of no significance as it appears to us unlikely that the legislature intended to carve out an exemption for governmental employees and officials and not the agencies they represent." *Id.* at 359.

¶ 29    Following the guidance of *Apex* and *Thoman*, when viewing the original section 8-11-6a in its entirety (Ill. Rev. Stat. 1989, ch. 24, ¶ 8-11-6a), it is apparent that the legislature intended to carve out broad categories that home rule units would be allowed to tax and that the use of the word "or" in "cigarettes or tobacco products" was originally employed by the legislature in an inclusive sense so as to cover the gamut of nicotine based products.

¶ 30    In 1993, the general assembly amended section 8-11-6a(2) to impose a limitation on "a tax based on the number of units of cigarettes or tobacco products." Besides this limitation, the language of the statute remained the same:

> "Notwithstanding the foregoing, this Section does not preempt any home rule imposed tax such as the following: *** (2) a tax based on the number of units of cigarettes or tobacco products *(provided, however, that a home rule municipality that has not imposed a tax based on the number of units of cigarettes or tobacco products before July 1, 1993, shall not impose such a tax after that date)*[.]" (Emphasis added.) 65 ILCS 5/8-11- 6a(2) (West 2016).

When adding this parenthetical clause to section 8-11-6a(2), the legislature mirrored the language that appeared in the original statute, "cigarettes or tobacco products." As previously determined, it was the legislature's intent to carve out a broad category. "Where a meaning is attributed to a word and it again appears in the same statute, it should be given consistent meaning unless a contrary legislative intent is clearly expressed." *Chapman v. County of Will*, 55 Ill. 2d 524, 529-30 (1973); *Borg*, 111 Ill. App. 3d at 657. Construing these terms consistently within the statute and in light of its original meaning, it follows that either a tax based on the number of units of cigarettes or tobacco products or both must have been in effect prior to July 1, 1993, in order for a home rule unit's power to tax "cigarettes or tobacco products" not to be preempted.

¶ 31    In addition, the legislature's repeated use of the words "a tax" in section 8-11-6a(2) supports our interpretation. The description of what a home rule unit is allowed to tax (the number of units of cigarettes or tobacco products) is introduced with an indefinite article, "a tax." The word "a" is an indefinite article and is used in English to "refer to a person or thing that is not identified or specified." Merriam-Webster Online Dictionary, https://www. merriam-webster.com/dictionary/indefinite%20article (last visited Dec. 4, 2018) [https:// perma.cc/AX98-2F4R]. Thus, according to the basic principles of grammar, when an indefinite article prefaces a noun, that noun refers to something general rather than something specific. Accordingly, based on common grammar principles and our prior conclusion that the

legislature intended to allow a home rule unit to tax a broad category of nicotine products, the words "a tax" as employed in the context of section 8-11-6a(2) refers not to a specific tax, but to a tax generally on either cigarettes or tobacco products or both. See *Warner v. King*, 267 Ill. 82, 87 (1915) (the grammatical construction of a statute is one mode of interpretation and "[s]tatutes *** are to be read and understood primarily according to their grammatical sense, unless it is apparent from a perusal of the context of the whole statute that the Legislature did not express its intention"); see also *People v. Cherry Valley Public Library District*, 356 Ill. App. 3d 893, 896-97 (2005) (interpreting a statute based on the grammar of the statute itself); *Lyons Township ex rel. Kielczynski v. Village of Indian Head Park*, 2017 IL App (1st) 161574, ¶ 26 (employing the "commonly understood principles of grammar and usage" to interpret a statute). Reading section 8-11-6a(2) in its entirety, it follows that the legislature intended for a home rule municipality to be able to tax cigarettes *or* tobacco products so long as the home rule municipality had "*a tax*" in place on either "cigarettes or tobacco products" prior to July 1, 1993. (Emphasis added.) 65 ILCS 5/8-11-6a (West 2016).

¶ 32 We conclude that because the City had enacted a tax on cigarettes prior to July 1, 1993, it fulfilled the condition of the statute that "a tax" exist on *either* the number of units of cigarettes *or* tobacco products. Thus, the City is not preempted from now enacting a tax on other tobacco products. Accordingly, we reverse the judgment of the circuit court granting plaintiffs' motion for partial summary judgment and denying the City's motion for summary judgment.

¶ 33                                         CONCLUSION
¶ 34 The judgment of the circuit court of Cook County is reversed.

¶ 35 Reversed.