2019 IL App (2d) 180551
No. 2-18-0551
Opinion filed June 12, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| MARGARET DYNAK, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 16-MR-1368 |
| | ) | |
| THE BOARD OF EDUCATION OF WOOD | ) | |
| DALE SCHOOL DISTRICT 7, | ) | Honorable |
| | ) | Bonnie M. Wheaton, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justice McLaren concurred in the judgment and opinion.
Justice Hudson dissented, with opinion.

**OPINION**

¶ 1    Plaintiff, Margaret Dynak, appeals the judgment of the circuit court of Du Page County granting the motion for summary judgment of defendant, the Board of Education of Wood Dale School District 7, and denying plaintiff's cross-motion for summary judgment. The issue presented here is whether, under section 24-6 of the School Code (105 ILCS 5/24-6 (West 2016)), plaintiff was entitled to use 30 days of her accumulated sick leave following the birth of her child. Specifically, plaintiff gave birth to her child at the end of the 2015-16 school year and defendant granted her 1.5 days of sick leave; plaintiff then requested to use 28.5 days of sick leave to begin the 2016-17 school year, and defendant denied that request. Plaintiff also claimed that defendant owed her attorney fees, pursuant to the Attorneys Fees in Wage Actions Act

(Wage Act) (705 ILCS 225/1 (West 2016)), and the parties agree that this claim is tied to the outcome of plaintiff's claim under the School Code. We affirm.

¶ 2                              I. BACKGROUND

¶ 3    We summarize the pertinent facts appearing in the record. Plaintiff has been a full-time teacher with defendant since the beginning of the 2008-09 school year. By the end of the 2015-16 school year, plaintiff had accumulated 71 paid sick days. At the beginning of the 2016-17 school year, plaintiff was awarded an additional 14 paid sick days, giving her a total of 85 paid sick days.

¶ 4    On March 15, 2016, plaintiff submitted a letter to the superintendent, Dr. John Corbett. Plaintiff wrote that she was scheduled to have her child by caesarean-section on June 6, 2016, the last full day of the 2015-16 school year. June 7, 2016 was a half day. Thus, plaintiff stated that she would be using 1.5 paid sick days on June 6 and 7. Plaintiff also stated that she intended to take 12 weeks of leave under the Family and Medical Leave Act of 1993 (FMLA) (see 29 U.S.C. § 2601 *et seq.* (2012)), commencing on August 18, 2016, the beginning of the 2016-17 school year. Plaintiff further stated, however, that she intended to take the first 28.5 days of that leave as paid sick days. Plaintiff expressly tied her use of the sick days to section 24-6 of the School Code, claiming that, under her reading, she could take 30 consecutive paid sick days for the birth of her child.

¶ 5    On April 21, 2016, Corbett replied to plaintiff's letter and approved plaintiff's request to use 1.5 paid sick days at the end of the 2015-16 school year and 12 weeks of FMLA leave at the beginning of the 2016-17 school year. Corbett denied, however, plaintiff's request to use 28.5 sick days at the beginning of the 2016-17 school year. Corbett stated that, because plaintiff's FMLA leave would "begin 10 weeks after the birth of her child, she [would] not be eligible to

use sick days for the leave unless additional circumstances exist[ed] that would normally allow for the use of paid sick leave."

¶ 6    After defendant's denial of plaintiff's request to use paid sick leave, Sylvia Rios, associate general counsel for the Illinois Education Association, formally reiterated plaintiff's request. According to Rios, section 24-6 entitled plaintiff to use up to 30 days of accumulated paid sick leave for the birth of her child, without having to provide medical certification, and this could encompass the 1.5 days at the end of the 2015-16 school year and the 28.5 days at the beginning of the 2016-17 school year.

¶ 7    On May 20, 2016, defendant replied to Rios, again denying the request to use the 28.5 paid sick days. On June 1, 2016, Rios sent to defendant a final demand requesting that, before June 15, 2016, defendant state its final position with regard to plaintiff's request. Defendant did not respond to that letter. On June 6, 2016, as scheduled, plaintiff gave birth to her child.

¶ 8    On August 18, 2016, the 2016-17 school year began, along with plaintiff's approved FMLA leave. On August 22, 2016, Corbett e-mailed to plaintiff his congratulations, along with two documents. One document was a letter confirming that, on November 10, 2016, plaintiff would resume her duties following the completion of her leave. The second document was a summary of plaintiff's salary for the 2016-17 school year, showing that plaintiff would be docked 58 days of pay coinciding with her leave and confirming that she could not use any paid sick days for that period. At all times relevant here, plaintiff had maintained more accumulated paid sick days than the 28.5 days she requested to use at the beginning of the 2016-17 school year.

¶ 9    On October 6, 2016, plaintiff made a written demand upon defendant, seeking payment for the unpaid wages resulting from defendant's denial of plaintiff's request to use the 28.5 paid

sick days. In the demand letter, plaintiff sought $8,074.91 in unpaid wages. However, the information upon which this claim was based was incorrect, because defendant had, in the summary of plaintiff's 2016-17 salary, used an incorrect pay rate. During the litigation, plaintiff corrected the amount to $7,991.46 and defendant did not dispute the correction.

¶ 10 On October 13, 2016, plaintiff filed a three-count complaint against defendant. In count I, plaintiff sought a declaratory judgment that she was allowed to use paid sick leave for the birth of her child, even though the leave would occur after the summer break. In count II, plaintiff sought attorney fees pursuant to the Wage Act. In count III, plaintiff alleged that defendant violated section 14(a) of the Illinois Wage Payment and Collection Act (820 ILCS 115/14(a) (West 2016)) by denying plaintiff's request to use paid sick leave. (Plaintiff represents that, after she filed her complaint, she "became aware of binding precedent" invalidating her claim in count III, and she does not seek review of the trial court's dismissal of that count.)

¶ 11 On April 26, 2018, defendant filed a motion for summary judgment on plaintiff's claims. On April 27, 2018, plaintiff filed a cross-motion for summary judgment. On June 20, 2018, the cross-motions for summary judgment advanced to argument before the trial court. The trial court orally ruled:

> "In order to adopt the interpretation of the statute urged by the plaintiff, the Court would have to find that the conditions set forth in the definition of sick leave create a vested right in the plaintiff and other similarly situated persons regardless of when those conditions occurred.
>
> The accident of giving birth in the summertime, I don't believe creates any kind of a right in the plaintiff to sick leave at a future period in time that is not covered by the Act.

For instance, if there were a death in the plaintiff's immediate family that took place on June 15th, after the school year ended, she could not reasonably expect to have three days of sick leave for that occurrence, but the sick leave taking place after the school [year] started.

And the same could be said for any of the other occurrences that are set forth in the definition of sick leave.

I believe that the interpretation urged by the defendant is a proper interpretation of the law.

I believe that the condition[s] set forth in the statute have to be read in peri [*sic*] materia, and that the plaintiff is not entitled to the sick leave in addition to the family medical leave."

¶ 12    The trial court granted defendant's motion for summary judgment and denied plaintiff's cross-motion for summary judgment. Plaintiff timely appeals.

¶ 13                                   II. ANALYSIS

¶ 14    On appeal, plaintiff contends that the trial court erred by granting summary judgment in favor of defendant. Plaintiff argues that section 24-6 of the School Code plainly and unambiguously entitled her to use her accumulated sick leave for the birth of her child even though the leave would occur after the summer break. Plaintiff also makes the related argument that, if she was entitled to use her sick leave, then, under the Wage Act, she is entitled to the attorney fees incurred in enforcing her rights. The interpretation of section 24-6 will determine the outcome of plaintiff's second contention. Therefore, we turn to the parties' arguments regarding section 24-6.

¶ 15                              A. Standard of Review

¶ 16    This case arises from the disposition of cross-motions for summary judgment. Summary judgment is proper when the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). Where the parties have filed cross-motions for summary judgment, they have conceded that there are no genuine issues of material fact and have agreed that only questions of law are involved. *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 24. In such a situation, the parties request that the court decide the issues as a matter of law. *Id.* We review *de novo* the trial court's judgment on cross-motions for summary judgment. *Id.*

¶ 17                    B. Construction of Section 24-6 of the School Code

¶ 18    The central issue presented in this case is the interpretation of section 24-6 of the School Code regarding the use of accumulated sick leave for the birth of a child. Section 24-6 provides:

"The school boards of all school districts, including special charter districts, but not including school districts in municipalities of 500,000 or more, shall grant their full-time teachers, and also shall grant such of their other employees as are eligible to participate in the Illinois Municipal Retirement Fund under the '600-Hour Standard' established, or under such other eligibility participation standard as may from time to time be established, by rules and regulations now or hereafter promulgated by the Board of that Fund under Section 7-198 of the Illinois Pension Code, as now or hereafter amended, sick leave provision not less in amount than 10 days at full pay in each school year. If any such teacher or employee does not use the full amount of annual leave thus allowed, the unused amount shall be allowed to accumulate to a minimum available leave of 180 days at full pay, including the leave of the current year. Sick leave shall be interpreted to

mean personal illness, quarantine at home, serious illness or death in the immediate family or household, or birth, adoption, or placement for adoption. The school board may require a certificate from a physician licensed in Illinois to practice medicine and surgery in all its branches, a chiropractic physician licensed under the Medical Practice Act of 1987, a licensed advanced practice nurse, a licensed physician assistant, or, if the treatment is by prayer or spiritual means, a spiritual adviser or practitioner of the teacher's or employee's faith as a basis for pay during leave after an absence of 3 days for personal illness or 30 days for birth or as the school board may deem necessary in other cases. If the school board does require a certificate as a basis for pay during leave of less than 3 days for personal illness, the school board shall pay, from school funds, the expenses incurred by the teachers or other employees in obtaining the certificate. For paid leave for adoption or placement for adoption, the school board may require that the teacher or other employee provide evidence that the formal adoption process is underway, and such leave is limited to 30 days unless a longer leave has been negotiated with the exclusive bargaining representative.

If, by reason of any change in the boundaries of school districts or by reason of the creation of a new school district, the employment of a teacher is transferred to a new or different board, the accumulated sick leave of such teacher is not thereby lost, but is transferred to such new or different district.

For purposes of this Section, 'immediate family' shall include parents, spouse, brothers, sisters, children, grandparents, grandchildren, parents-in-law, brothers-in-law, sisters-in-law, and legal guardians." 105 ILCS 5/24-6 (West 2016).

¶ 19    When interpreting a statute, we must ascertain and give effect to the legislature's intent. *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 24. The best indication of that intent is the language employed in the statute, given its plain and ordinary meaning. *Id.* When the statute's language is unambiguous, we may not depart from that language by reading into it exceptions, limitations, or conditions unexpressed by the legislature; likewise, we may not add provisions under the guise of interpretation. *Id.* Moreover, when the statute is unambiguous, we apply the statute without resort to other aids of statutory construction. *Palm v. Holocker*, 2018 IL 123152, ¶ 21. If, however, the meaning of the statute is unclear, we may consider the purpose behind the law and the evils the law was intended to remedy. *Id.* We have an obligation to construe statutes in a manner that avoids absurd, unreasonable, or unjust results that the legislature could not have intended. *Id.* With these principles in mind, we turn to the language of section 24-6.

¶ 20    As a starting point, section 24-6 ties sick leave very specifically to the school year, awarding a teacher "not less in amount than 10 days at full pay in each school year." 105 ILCS 5/24-6 (West 2016). This suggests that sick leave pertains only to the school year, not to other portions of the year outside of the school year, such as summer break.[1] Next, we note that

---

[1] Other related leave provisions are also tied to the school year or periods occurring within the school year. *E.g.*, *id.* § 24-6.1 (provides sabbatical leave for teachers "for a period of at least 4 school months but not in excess of one school term"); *id.* § 24-6.3 (where a teacher is an elected trustee of the Teachers' Retirement System of the State of Illinois (System), the school board shall give that teacher at least 20 days of paid leave of absence per year for the teacher to engage in system-related business and the System shall reimburse the school district for the

section 24-6 defines sick leave as for "personal illness, quarantine at home, serious illness or death in the immediate family or household, or birth, adoption, or placement for adoption." *Id.* We note that this definition includes two broad categories of circumstances: (1) "personal illness, quarantine at home, serious illness or death in the immediate family or household"; "or" (2) "birth, adoption, or placement for adoption." *Id.* In other words, "[s]ick leave shall be interpreted to mean" category (1) *or* category (2). The disjunctive "*or*" is important, because it suggests that the characteristics of the categories differ. If this were not so, then one category would essentially repeat the circumstances of the other category, an interpretation forbidden under the rules of statutory interpretation. See *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 23 (each word, clause, and sentence of a statute must be given meaning and should not be rendered superfluous). Thus, giving effect to the characteristics of each category means that each category differs from the other.

¶ 21    In category (1), the overarching characteristic seems to be illness, either personal or in the employee's family, which suggests an element of incapacity. Thus, in category (2), for birth-related sick leave, the overarching characteristic cannot be illness-related, meaning that incapacity is not a central feature. There can be some overlap; for example, if the employee gives birth, there can be some element of incapacity. However, if the employee is the partner of

actual cost of hiring a substitute teacher during the leaves of absence; likewise, if a school board employee is an elected trustee of the  Illinois Municipal Retirement Fund (Fund), the board shall provide at least 20 days of paid leave of absence per year for the employee to engage in Fund-related business and the Fund may reimburse the school district for the actual cost of hiring a substitute employee).

the individual giving birth, or if the circumstances involve adoption or placement for adoption, the central feature is an addition to the employee's family, rather than any incapacity. Thus, category (2) is distinct from category (1) (and thus not superfluous) in that the focus is on the adjustment to the change in the family, not on any incapacity aspect of birth.

¶ 22    This distinction between category (1) and category (2) is reinforced by looking at the benefits associated with each. In general, an employee may claim up to "3 days for personal illness or 30 days for birth" before the school board may require a certificate to justify the absence. 105 ILCS 5/24-6 (West 2016). Personal illnesses are often of relatively brief duration; thus, in general, the legislature permitted the board to require certification of personal illnesses only when they exceed the three-day threshold. By contrast, the adjustment to a new baby is a lengthier process; the 30-day threshold "for birth" seems to account for this. Based on its plain and unambiguous language, section 24-6 bestows 30 days of sick leave for birth before a certificate may be required.

¶ 23    We note that the inclusion of category (2) (birth-related) appears to be the legislature's response to *Winks v. Board of Education*, 78 Ill. 2d 128 (1979). *Winks* interpreted section 24-6 as it existed at that time to answer the question of whether maternity leave was included within the statute's concept of sick leave. *Id.* at 131-32. The court held that it was not, based on the plain language of the statute. *Id.* at 140. Thus, the "for birth" category, added in amendments after *Winks*, must be given effect as a different category than the illness category, whose language is substantially the same as that interpreted by *Winks*.

¶ 24    The next question is whether "day" in section 24-6 refers to a calendar day or a work day. The provision discusses sick leave, which means an excused day off of work, with pay. It would be absurd to give an employee leave on a day that the employee is not required to be present at

work. Therefore, "day" must mean "work day" and not "calendar day." We note that there is no question that *Winks* interpreted "day" to mean "work day." *Id.* at 142 (nothing in the record "show[ed] that any of [the plaintiff's] time absent from teaching duties was attributable to" her pregnancy; the plaintiff "has not established that she has lost any working days due to her 'personal illness' [(complications of her pregnancy, primarily involving varicose veins)] and therefore [she] may not recover sick leave benefits under section 24-6"). Finally, some examples serve to bolster our conclusion.

¶ 25    First, if an employee who works Monday through Friday were to experience a personal illness beginning on a Saturday and concluding on a Sunday, the employee would not have to invoke any sick leave at all, because he or she would not be required to be at work. Thus, for sick leave to provide any meaningful benefit to the employee, "day" must mean "work day," not "calendar day." If that employee were to experience a three-day illness commencing on a Monday, then the employee would be entitled to take three days of sick leave. If, by contrast, the three-day illness were to commence on a Thursday, the employee would incur only two days of sick leave. Requiring an employee to take sick leave for days the employee is not obligated to be at work would be an absurd result. Thus, for purposes of section 24-6, "day" must refer to "work day" and not "calendar day."

¶ 26    It could be argued that, owing to the distinctions between the two categories, the term "days" in the phrases "3 days for personal illness" and "30 days for birth" need not be interpreted in the same manner. This argument fails by overlooking the tenet of statutory construction that presumes that a word or phrase that is repeated in a statute will have the same meaning throughout. *Iwan Ries & Co. v. City of Chicago*, 2018 IL App (1st) 170875, ¶ 23. Moreover, given the fact that section 24-6 discusses sick leave, it would be incongruous to interpret "3 days

for personal illness" as meaning 3 work days while interpreting "30 days for birth" as meaning 30 calendar days, some of which, necessarily, would be days when the employee is not obligated to be at work. Thus, despite the divergent characteristics of the two categories, "days" must have the same meaning when applied to either category, or absurdity would result. Additionally, nothing in the plain language of section 24-6 suggests that "days" should be interpreted differently for illness-related sick leave versus birth-related sick leave. Therefore, we must conclude that, in order to avoid an absurd construction, "days" must mean work days, not calendar days.

¶ 27 As a final point, we note that the legislature amended section 24-6 to add the "for birth" category to sick leave benefits. In other words, a teacher is eligible to use accrued sick leave both for illness and for birth. However, section 24-6 remained unchanged in one important respect: sick leave still applied only to working days, not nonworking days. Sick leave under the amended section 24-6 may be accrued only during the school year (*i.e.*, during working days) and is available for use only during work days.

¶ 28 The balance of section 24-6 deals with the certification of sick leave and who is required to pay for the certification and under what circumstances. Of note to the issue presented, if a school board requires certification for less than 3 days of illness-related sick leave, the board must pay for it. See 105 ILCS 5/24-6 (West 2016). However, the board may not require certification for any birth-related sick leave of less than 30 days. See *id.* In addition, section 24-6 awards a minimum of 10 days of paid sick leave each year, and an employee is allowed to accumulate a minimum of 180 days of paid sick leave overall. *Id.* Section 24-6 also appears to contemplate that a local union can negotiate more generous terms than the minimums the statute

sets forth (*e.g.*, more sick days per school year, greater accumulation, or longer periods before certification may be required).

¶ 29    As we construe the relevant language of section 24-6, an employee is entitled to 30 work days for a birth-related sick leave.  The final question is what that means under the facts of this case.  Plaintiff argues that, because her birth-related sick leave began with 1.5 days at the end of the 2015-16 school year, she was entitled to continue that leave with 28.5 days after the intervening summer break.  Pointing out that the statute contains no temporal constraints on how to apportion sick leave, plaintiff contends that she was entitled to 30 consecutive work days beginning when she gave birth.  While plaintiff's argument has some logical force, we believe that it would lead to an absurd result.  Again, some examples will help to flesh out the problems inherent in plaintiff's construction.

¶ 30    Suppose that an employee becomes ill on the final two days of a school year, is then ill for seven calendar days, makes a complete recovery, and obtains a medical certificate.  Following the illness, the employee experiences no other health disturbances and is fit and able to return to work on the first day of the following school year.  As we have seen above, the employee would be entitled to illness-related sick leave for the final two days of the previous school year.  Under plaintiff's construction, because the illness lasted longer than the 3-day threshold and was certified, that employee could also claim one more day of sick leave on the first day of the new school year.  However, such a claim would divorce sick leave from the event requiring the leave.  Thus, plaintiff's construction of section 24-6 in this scenario would lead to an absurd result.

¶ 31    Suppose that the employee experienced the same seven-day illness but it instead began five (calendar) days before the start of the new school year.  Under this scenario, the illness

would consume the first two days of the new school year, and the employee would be entitled to only those days of sick leave. The employee would not be able to take the other five days of sick leave even if the employee obtained a certificate, because that would be an absurd result, again divorcing sick leave from the triggering event.

¶ 32 Plaintiff argues that, as we noted above, illness-related sick leave is fundamentally different from birth-related sick leave, because illness-related leave involves some element of physical incapacity and, although birth-related sick leave can have an ancillary component of physical incapacity, it is primarily concerned with the adjustment to the change in the family. However, both illness-related sick leave and birth-related sick leave are defined and dealt with in the same statute, and thus they are inextricably connected (and, as a result, must be implemented similarly). With that said, we agree that birth-related sick leave focuses not on physical incapacity but on family adjustment and bonding. If this were not so, then birth-related sick leave would not be available to fathers (and it would be subsumed into illness-related sick leave). However, each type of sick leave has a triggering event. For illness-related sick leave, that triggering event is an illness or similar event, either to the employee or to a close family member. For birth-related sick leave, that triggering event is a birth (or adoption or placement for adoption). In its wisdom, the legislature decreed that an employee is entitled to a 30-work-day leave for the event of a birth and, as with illness-related leave, divorcing the leave from the triggering event would render the provision absurd.

¶ 33 We also note that the tenet of statutory construction that requires ascribing the same meaning to the same words used throughout a statute also compels this result. *Iwan Ries*, 2018 IL App (1st) 170875, ¶ 23. As the subject of section 24-6 is sick leave, due to a triggering event of either illness or birth, the leave granted should be interpreted in the same manner in each case.

Thus, if it would be an absurd result for an illness-related sick leave to be divorced from the triggering event of an illness, it would likewise be an absurd result for birth-related sick leave to be divorced from the triggering event of a birth. That is to say, breaking up a sick leave over a nonwork period would lead to an absurd result if the nonwork period is lengthy in relation to the leave contemplated. Thus, as using an illness-related sick leave after a week-long break (during which the illness has resolved) would be unreasonable, using a birth-related sick leave after the 10 weeks of summer break would be unreasonable, as we have explained above.

¶ 34   A perhaps more fruitful lens through which to consider section 24-6 is to consider it in light of a collective bargaining agreement (CBA). Plaintiff adverts to the CBA here by noting that the union had bargained to obtain 14 days of sick leave for each school year. That suggests that the CBA contains an explicit provision dealing with sick leave. Unfortunately, plaintiff did not place that agreement into the record before the trial court. As a result, any argument arising from the CBA is not properly before us and must be considered forfeited.

¶ 35   We also note that the argument could be made that, beyond the time off of work when using sick leave, the more important consideration is receiving full pay for that time. This appears to be the actual focus of this case. Defendant did not have a problem granting plaintiff time off at the beginning of the 2016-17 school year but balked at her request to receive pay for the first 28.5 days by using her accumulated sick leave. Plaintiff argues that defendant deemed the FMLA leave to be "for birth" and thus tacitly recognized that birth-related sick leave should apply. This might be a stronger argument if plaintiff had tied it to her bargained-for benefits under the CBA. However, plaintiff has couched her arguments around the idea of days away from work rather than payment for those days. Thus the issue is not squarely before us, and we decline to address it further.

¶ 36    Plaintiff's argument that she should be allowed to use her accumulated sick leave essentially as she sees fit, where she would use it on the 30 consecutive work days following the birth of her child, is not unreasonable.  However, as plaintiff notes, section 24-6 does not contain any time limits on the use of leave beyond defining the period within which an employee may not be required to provide certification for the event triggering the leave.  Plaintiff does not suggest how to incorporate any time limits that would avoid the absurd result that would result from her position that any sick leave should include the 3 or 30 consecutive work days, regardless of any holiday or break occurring between the first and last days of the leave.  To draw those lines would be adding terms into the statute that the legislature did not include.  See *Rosenbach*, 2019 IL 123186, ¶ 24.  Instead, we are limited to interpreting the statute as written, so as to avoid an absurd result.  *Palm*, 2018 IL 123152, ¶ 21.  Because birth-related sick leave should be construed in the same manner as illness-related sick leave, interrupting that leave with a lengthy break in relation to the contemplated leave period would cause an absurd result.  Thus, under the facts presented here, where plaintiff's birth-related sick leave was properly triggered on the penultimate day of the 2015-16 school year but then interrupted by the summer break, adopting plaintiff's construction would lead to an absurd result, allowing the leave to reinitiate approximately 10 weeks after the triggering event.

¶ 37    Defendant appears to advocate[2] that the 30 days for a birth-related sick leave should comprise the birth date and the immediately following days.  This is problematic for a number of

---

[2]   We note that part of defendant's appellate strategy is not to offer a competing construction of section 24-6.  Indeed, defendant does not attempt to ascertain the legislature's intent in enacting the statute.  Instead, defendant challenges plaintiff's arguments and relies on

reasons. First, a day of sick leave must be a work day, so defendant's position would have to be revised to mean the immediately following work days, which is actually what plaintiff advocates. Second, birth-related sick leave includes adoption and placement for adoption, processes that do not necessarily begin clearly on a specific date. Obviously an adoption will occur on a specific date, but the adopting employee might need to be present for a period of time before receiving custody of the child (and similarly for placement for adoption). Adoption-related sick leave would necessarily have to incorporate this period, but, under defendant's position, the leave could begin only on the date that the employee received custody.[3] Finally, and most importantly, section 24-6 contains no time limits on how sick leave must be taken. Defendant's construction would require us to write in those limits, and this we may not do. See *id.* Under our construction, however, the watchword is reasonableness. Suppose that there is a one-week break in the middle of a birth-related sick leave, then it might be reasonable that the employee would get the remainder of the 30 work days following the conclusion of that break, because the break is much shorter than the contemplated leave period (but, depending on the facts, it could still lead to an absurd result). Moreover, sick leave means that the employee is absent from work for

the fact that, below and here, plaintiff has the burden of persuasion. This, of course, is a viable strategy, but it does not much assist our consideration of section 24-6.

[3] We note that the birthing process can likewise occur over more than one day and that complications can require the mother to take leave before giving birth. Such complications, however, would fall under illness-related sick leave (based on physical incapacity), and the beginning of labor would also seem to be the actual triggering event for a birth-related sick leave.

some reason covered by the statute or a CBA. It is axiomatic that, if the employee is not required to be at work, then the employee cannot *leave* work. Here, plaintiff was not required to be at work for approximately 10 weeks after her leave was triggered, due to the summer break.

¶ 38 Accordingly, we hold first that a leave period comprises only work days. If the leave period is interrupted by some sort of holiday or break period, then, depending on the length of the break versus that of the leave, allowing the employee to claim the remainder of the leave period immediately following the break could yield an absurd result. Here, plaintiff sought to use the remaining 28.5 work days of her birth-related sick leave following the approximately 50-work-day summer break. The break was too long for this construction to avoid absurdity. Thus, we agree with the trial court's judgment.

¶ 39                                C. Plaintiff's Specific Contentions

¶ 40 We now address plaintiff's specific contentions. As an initial matter, because we agree with plaintiff that the term "days" in section 24-6 necessarily refers to work days, we do not need to address her contentions on this point. We note that defendant does not directly challenge the interpretation of "days" in section 24-6. Defendant's interpretation instead seems fluid, accepting that sick-leave days are in fact work days but implying that the 30 days for a birth-related sick leave are actually calendar days and yet inconsistently arguing that the 30-day period coincides with common medical knowledge that it takes about six (calendar) weeks for the mother's body to return to normal. We need not respond to defendant's position either, but we do note that, in justifying the 30 days for birth-related sick leave as coincident to the six (calendar) week period of medical recovery from birth, defendant concedes that the proper interpretation is, in fact, work days, because 30 work days correspond to six calendar weeks.

¶ 41    Plaintiff notes that section 24-6 specifies a sick-leave period of "30 days for birth" (105 ILCS 5/24-6 (West 2016)), but that it does not provide when the 30-day period must commence. To do so, the legislature would have had to decree that it be completed within 30 days of birth, or 30 days after the birth.  Plaintiff contrasts section 24-6's "30 days for birth" provision with section 10(b) of the Child Bereavement Leave Act, which provides that an employee must complete the bereavement leave "within 60 days after the date on which the employee receives notice of the death of the child."  820 ILCS 154/10(b) (West 2016).  The direct comparison is inapt because, unlike the "30 days for birth" provision in section 24-6, section 10(b) defines not the benefit but the time period for its use.  However, section 10(b) does provide an illustration of the legislature's competency in expressing time limits, and we agree with plaintiff that section 24-6 does not define an express time limit for the use of the "30 days for birth" period.  With that said, as explained above, plaintiff's construction, while not as unlimited as defendant wishes us to believe, nevertheless would result in an absurdity under the facts of this case and thus cannot stand.

¶ 42    Plaintiff next argues that the fact that the 30-day period may be used only "for birth" (and adoption and placement for adoption) provides the necessary time limit.  According to plaintiff, the "for birth" language requires a connection between the use of accumulated paid sick leave and the birth of a child.  Plaintiff's contention, however, proves too much.  Because the requirements for illness-related leave and birth-related leave must be interpreted similarly (see *Iwan Ries*, 2018 IL App (1st) 170875, ¶ 23), plaintiff's construction would also have to apply to illness-related leave, and this would cause an absurd result, as explained above.  There is a difference between a weekend-long interruption of an illness-related sick leave and a much longer interruption such as the summer break at issue here (although the specific circumstances

could affect the outcome). Thus, here, the intervening summer break means that the commencement of the 2016-17 school year was simply too attenuated from the birth of plaintiff's child for plaintiff's construction to avoid absurdity. Because we must avoid a construction that results in an absurd outcome (*Palm*, 2018 IL 123152, ¶ 21), plaintiff's argument fails.

¶ 43    Plaintiff suggests that an intervening two-week winter break or a one-week spring break would pass muster. Neither scenario, however, is before us. We could also see a situation in which an employee gives birth one or two calendar weeks before the beginning of a school year and seeks to use the full 30-work-day birth-related sick leave. In any such case, the decision to grant leave would likely turn on the length of the contemplated leave period compared to the length of the break, but as none of those circumstances are before us, we decline to comment further.

¶ 44    Plaintiff also argues that defendant's acceptance of her request to use FMLA leave (29 U.S.C. § 2601 *et seq.* (2012)) validates that her request to use the 28.5 days of her birth-related sick leave was, in fact, "for birth." Plaintiff notes that defendant approved plaintiff's "request for a 12[-]week leave [pursuant] to the Family Medical Leave Act, *** [to] begin 10 weeks after the birth of [plaintiff's] child." Plaintiff states that, while defendant accepted that the FMLA leave was "for birth," it also denied plaintiff's request "to use sick days for the leave" unless medical certification was provided. Plaintiff argues that defendant's allowance of FMLA leave "for birth" and its denial of birth-related sick leave for a portion of the very same period are contradictory and "indefensible." We disagree.

¶ 45    The FMLA expressly provides that an employee's entitlement to use FMLA leave for the birth of a child expires 12 months after the child's birth. *Id.* § 2612(a)(2). Thus, unlike section

24-6, the FMLA expressly provides a time period in which to use the leave; by contrast, the sole triggering event in section 24-6 is the child's birth and no provision is made for when birth-related sick leave must be used. Thus, because the purpose behind the FMLA, and the execution of that purpose, differs from the purpose of section 24-6, defendant's acceptance of plaintiff's FMLA leave "for birth" neither contradicts its denial of plaintiff's request to use birth-related sick leave nor is it indefensible.

¶ 46 Next, plaintiff assails the trial court's judgment for accepting defendant's argument that the 30-day birth-related sick leave aligns with the common medical understanding that the mother's body typically needs approximately six weeks to recover from birth. We agree with plaintiff that defendant's argument finds no support in the language of section 24-6 and cannot be relied upon to properly construe section 24-6. See *Rosenbach*, 2019 IL 123186, ¶ 24 (a court may not incorporate into a statute terms not included by the legislature). However, this does not mean that we reject the trial court's judgment, as we review only the trial court's judgment and not its reasoning. See *Republic Bancorp Co. v. Beard*, 2018 IL App (2d) 170350, ¶ 26. As we above determined that the trial court's judgment was correct, we reject plaintiff's contention that we must disturb that judgment based on the court's acceptance of defendant's argument that was unsupported by the statute.

¶ 47 Plaintiff next assails the trial court's judgment because the trial court interpreted illness-related leave and birth-related leave similarly. Specifically, plaintiff finds fault with the trial court's statement in explanation of its judgment:

"For instance, if there were a death in the plaintiff's immediate family that took place on June 15th, after the school year ended, she could not reasonably expect to have

three days of sick leave for that occurrence, but the sick leave taking place after the school [year] started.

And the same could be said for any of the other occurrences that are set forth in the definition of sick leave."

Plaintiff argues that, by interpreting "leave" similarly in the two broad categories, the trial court effectively subsumed birth-related leave into illness-related leave and placed the same time limit on the use of such leave. We disagree.

¶ 48 Plaintiff's argument overlooks that a repeated term must be construed similarly throughout the statute. See *Iwan Ries*, 2018 IL App (1st) 170875, ¶ 23. The trial court correctly applied this principle. In addition, as we discussed above, the approximately 10-week, or 50-work-day, interruption of the leave means that plaintiff's construction leads to an absurd result. See *Palm*, 2018 IL 123152, ¶ 21. For these reasons, we reject plaintiff's contention.

¶ 49 Plaintiff next argues that the trial court incorrectly interpreted the legislative history of section 24-6. This is another attack on the trial court's reasoning. As we review only the trial court's judgment here (see *Republic Bancorp*, 2018 IL App (2d) 170350, ¶ 26), and as we have determined that judgment to be correct, we reject plaintiff's argument. We also note that we do not need to resort to aids of construction, like legislative history, because we find the language in section 24-6 to be unambiguous. *Palm*, 2018 IL 123152, ¶ 21 (where statutory language is unambiguous, it will be given effect without resort to other aids of construction). Plaintiff's contention does not change our construction or conclusion regarding section 24-6.

¶ 50 Plaintiff next contends that the fact that section 24-6 permits an employee to take up to 30 days of birth-related sick leave without providing certification means that the sick leave need be taken only "for birth" and during consecutive work days. Plaintiff argues that the fact that a

male may also take birth-related sick leave means that the purpose of birth-related sick leave is not the recovery from physical incapacity but is independent from physical incapacity. We agree with plaintiff's construction insofar as we believe that illness-related leave does focus on physical incapacity whereas the birth-related category focuses on family adjustment. As discussed above, however, that is not the end of the story, and our construction must be reasonable and avoid an absurd result not intended by the legislature. Plaintiff's contention fails to address the further steps necessary to properly construe section 24-6.

¶ 51    Last, plaintiff objects to defendant's argument, below and here, that plaintiff's construction untethers birth-related sick leave from its triggering event. Plaintiff notes that defendant goes so far as to suggest that adopting plaintiff's construction would mean that a parent could take the 30-day birth-related sick leave even years after a birth, simply by claiming that it is for the birth and has not yet been taken. Obviously, defendant's parade of horribles is hyperbolic and runs afoul of absurdity, which, apparently, is the point. At root, plaintiff argues that, so long as the work days are consecutive, then the leave period should be permitted regardless of any interruptions by breaks, holidays, or other nonwork days. We rejected that construction above and, for the same reasons, we again reject it.

¶ 52                              D. The Dissent

¶ 53    The dissent essentially adopts plaintiff's arguments about how birth-related sick leave should be calculated. We have addressed those arguments and need not repeat ourselves in response. There are, however, several points that flow from the dissent's contentions.

¶ 54    First, in the posture of the case, the parties have couched their arguments in terms of time. The dissent also adopts this posture, contending that plaintiff "may use almost none of the sick days that she has accumulated." *Infra* ¶ 63. This obscures the fact that plaintiff was granted

all of the time that she requested; she just did not receive pay for the time off. Plaintiff will receive the funds she was denied, just at a later date, when she retires or separates from her employment.

¶ 55    As this case was more concerned with money than time, the second point that neither plaintiff nor the dissent has acknowledged is the cost that the school district and the local taxpayers would incur under plaintiff's construction. A school district (and hence the local taxpayers) would effectively have to pay twice: for the teacher on birth-related sick leave and for the substitute teacher covering for the absence. Beyond the double payment, the school district would also incur costs in planning and arranging for the protracted absence, both in time and resources. As we recognized above, an economic argument might have been more persuasive in that plaintiff is being deprived of the statutory (and presumably contractual) benefit of the bargain she accepted in becoming a teacher. The flip side, however, is the cost to the school district and its taxpayers. Obviously, we did not base our judgment on this point, but it is important to note its existence.

¶ 56    We also note that adopting plaintiff's and the dissent's construction would tend to confer upon teachers and teachers alone a sort of *sub rosa* paid parental leave based on the fortuity of the timing of birth. (Again, we emphasize that plaintiff received the time requested, just not the present use of the funds.) There is no textual support for such an intention. If the legislature had intended to confer paid parental leave, it would not have hijacked a sick-leave provision to do so.

¶ 57                                E. Plaintiff's Wage Act Claim

¶ 58    The parties agree that the success of plaintiff's claim for attorney fees under the Wage Act is tied to the success of plaintiff's construction of section 24-6. Plaintiff argues that, if she prevails, she is entitled to attorney fees, and defendant argues that, because plaintiff did not

prevail below and should not prevail here, she is not entitled to fees. As we have held that the trial court properly ruled against plaintiff on the section 24-6 issue, plaintiff is not entitled to attorney fees.

¶ 59                                    III. CONCLUSION

¶ 60    For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 61    Affirmed.

¶ 62    JUSTICE HUDSON, dissenting:

¶ 63    The majority recognizes the well-established principle that we may not read into a statute any exception, limitation, or condition unexpressed by the legislature. *Supra* ¶ 19. Nevertheless, in my view, the majority goes on to do exactly that. Although section 24-6 states merely that a teacher may use 30 of his or her accumulated sick days "for birth" (105 ILCS 5/24-6 (West 2016)), the majority holds that, in fact, he or she may do so except when the summer break interrupts those days. The consequence for plaintiff is that she may use almost none of the sick days that she has accumulated over the years as a full-time teacher with defendant. In my view, the majority is not construing the statute but rewriting it, and in doing so it is reaching, rather than avoiding, an absurd result. Accordingly, I respectfully dissent.

¶ 64    To me, this issue is relatively straightforward. As noted, section 24-6 states that a teacher may use 30 of his or her accumulated sick days "for birth." A sick day, as the majority observes, can be used only on a workday. *Supra* ¶ 24. Here, plaintiff gave birth, and she proposed to use 30 of her accumulated sick days on her next 30 workdays. The only issue is that, because plaintiff happened to give birth at nearly the end of a school year, her next 30 workdays were interrupted by the summer break. But the statute provides no exception for that circumstance. Thus,

- 25 -

defendant should have granted her request.

¶ 65   The majority, however, creates that exception, and it does so purportedly to avoid an absurd result. It would be absurd, the majority reasons, to permit a teacher to take a part of a "birth-related sick leave" before the summer break and to take the remainder after. *Supra* ¶ 29. But its argument to this effect is that, because it would be absurd to permit this for an "illness-related sick leave," and because the two "categories" of "leave" must operate similarly, it must also be absurd to permit this for a "birth-related sick leave." *Supra* ¶ 33. I cannot subscribe to this analysis.

¶ 66   First, the statute does not provide that a teacher may take a "birth-related sick leave" or an "illness-related sick leave." It simply states that a teacher may use his or her accumulated "sick leave" days for "birth" or for "illness." 105 ILCS 5/24-6 (West 2016). The distinction is subtle but important. Only by construing the statute to create two "categories" of "leave" can the majority declare the obligation to construe the term "leave" consistently in both contexts. *Supra* ¶ 47. But again, the statute does no such thing. It simply states that a teacher may use his or her accumulated "sick leave" days for either of two very different events: "birth" or "illness." There is nothing in the statute that requires the same construction in those different contexts.

¶ 67   And indeed, because those contexts are so different, the absurdity of the result in one does nothing to establish the absurdity of the result in the other. The majority observes that, if a teacher were to contract a seven-day illness on the next-to-last workday of a school year, it would be absurd to allow the teacher to use a sick day on the first workday of the next school year. *Supra* ¶ 30. Yet the statute itself would not permit this: it allows the use of sick days for "illness," and this hypothetical teacher had no illness on that first workday. So, of course, the teacher could not use a sick day on that workday.

¶ 68    However, as the majority acknowledges, the purpose of allowing the use of sick days "for birth" is not merely to allow the teacher to recover from the physical effects of the birth; it is to allow for family adjustment and bonding. *Supra* ¶ 21. Presumably, by the start of the next school year, plaintiff had recovered from the physical effects of the birth. But this did not make her equivalent to the majority's hypothetical teacher who had recovered from an illness. There would have been nothing absurd about allowing plaintiff to use her sick days at the start of the next school year, as the adjustment period still would have been underway. Those days still would have been, per section 24-6, "for birth."

¶ 69    In any event, the fact remains: the statute itself contains no exception for intervening summer breaks. The creation of that exception is the legislature's province, not our own.[4] I would add that the same holds true for the majority's creation of a sliding scale for the use of sick days before and after intervening breaks. *Supra* ¶ 38 ("If the leave period is interrupted by some sort of holiday or break period, then, depending on the length of the break versus that of the leave, allowing the employee to claim the remainder of the leave period immediately

---

[4] Whether the exception should be justified by "the cost to the school district and its taxpayers" (*supra* ¶ 55) is particularly a legislative concern. See *Wilkins v. Gaddy*, 734 F.3d 344, 351 (4th Cir. 2013) ("Protection of the public fisc is a core responsibility of the legislative branch."). In my view, however, the majority unfairly suggests that plaintiff's "construction" of the statute—which I note again is simply a reading of it—would require the district and its taxpayers to pay both for a teacher's use of sick days and for "the substitute teacher covering for the absence." *Supra* ¶ 55. This "double payment" (*id.*) is required *whenever* a teacher uses sick days under the statute; it is not a product of plaintiff's particular "construction."

following the break could yield an absurd result."). This inexact standard risks arbitrary application and has no roots in the text of the statute.

¶ 70    Ultimately, according to the majority, a teacher who happens to give birth in the middle of a school year may use 30 accumulated sick days; a teacher who happens to give birth during the last month of a school year may use fewer; and plaintiff, who happened to give birth on very nearly the last day of a school year, may use almost none. All despite the fact that these teachers are otherwise identically situated. This, in my view, would constitute an absurd result.

¶ 71    For these reasons, I respectfully dissent.